L'Hote & Co. vs. Fulham.

---

No. 12,955.

L'Hote & Co. vs. Wm. C. Fulham.

Syllabus.

The purchaser of property sold at sheriff's sale, in foreclosure of a mortgage, does not acquire under his purchase the chandeliers and brackets placed in the dwelling house thereon by the owner. They are movables, not immobilized by destination.

ON APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

L'Hote & Co. vs. Fulham.

*Howe, Spencer & Cocke* for Plaintiffs and Appellees.

*E. Howard McCaleb* for David G. Baldwin, Third Opponent, Appellant.

Argued and submitted April 5, 1899.
Opinion handed down April 17, 1899.

The opinion of the court was delivered by

NICHOLLS, C. J.   The plaintiffs having obtained judgment against the defendant, issued execution thereon and seized certain chandeliers, mantel ornaments and other articles alleged to belong to W. C. Fulham, but which were in the possession of D. G. Baldwin.

The latter filed his intervention and third opposition alleging that he was the owner of the articles seized inasmuch as he had purchased at foreclosure sales the buildings in which they were situated, and as they were immovable by destination, they were subject to the mortgage foreclosed and passed by the sheriff's sale to the purchaser of the real estate.

L'Hote & Co. answered, pleading the general issue.

The District Court rendered judgment in favor of L'Hote & Co.

The seizing creditors and third opponent appealed.

Appellant in his brief presents the following as the statement of his case:

"In June, 1895, the defendant mortgaged in favor of the estates of D. C. and H. C. McCan various lots of ground in New Orleans, with all the buildings, improvements, rights, privileges, advantages and servitudes thereon.   Mrs. Stemple as tutrix of the minor heirs of McCan, owners of the mortgage notes, caused executory process to issue.

"After the writs of seizure and sale were in the sheriff's hands, the parties agreed that 'the property herein seized under executory process should be sold for cash, the defendant hereby waiving the prematurity of the principal mortgage note held by plaintiffs, and it is further agreed that the civil sheriff be authorized to cause plans of the property to be made *so that each house embraced in the mortgage property* may be sold *separately.*'   The properties sold under these foreclosure proceedings were duly advertised by the sheriff:

"No. 1817 Napoleon avenue, was described as being 'a handsome

two-story and attic frame residence, containing ten rooms, bath, pantry, etc., also four rooms in attic. All modern conveniences.'

"No. 1910 Berlin street was described in the advertisement as follows: 'The buildings thereon, bearing the new municipal number 1910 Berlin street, being modern two-story frame residence, containing nine rooms, galleries, bath, and all modern conveniences.'

"*No. 1838 Berlin street* as being 'modern handsome two-story and attic frame residence containing ten rooms, bath, pantries, and three rooms in attic; all conveniences.'

"*No. 1925 Berlin street* as 'containing reception hall, four bedrooms, closet, outhouse contains bedroom and wood shed and bath room; electric bells, speaking tubes, etc.'

"No. 1922 Berlin street, as 'being modern two-story frame residence, nine rooms, halls, galleries, baths, pantries, etc.; walls handsomely papered, *hardwood mantels,* electric bells; etc.; banquette and yard paved with schillinger; *gas, waterworks, etc.'*

"No. 1829 Napoleon avenue, as 'being modern two-story frame residence containing twelve rooms, galleries, bath, all modern conveniences.'

"These properties together with all the improvements were leased by Fulham to different parties before the time of the seizure in these cases.

"Defendant Fulham was present at the sale and made no objection to the adjudication of the several properties to the opponent.

"The things seized in No. 1829 Napoleon avenue were contained in the property occupied by Thomas J. Duggan as tenant. He had been there five or six years. They were put in by W. C. Fulham. Those in No. 1929 Napoleon avenue, occupied by Mrs. Woeste, were put in there by the owner Fulham. Those in No. 1817 Napoleon avenue, occupied by Mrs. Rice, who had been living there as tenant for seven years, were in the house since she had lived there. Those in No. 1817 Berlin street, occupied by S. H. Kennedy, were all there when the tenant took possession, except the brass lights in the fourth bedroom, which had been there for three years.

"The third opponent as purchaser took possession of the properties as well as the things contained within, and remained in continuous possession until the articles were seized on October 17, 1896, following the sale."

Opponent in his brief laid considerable stress upon the terms of the

advertisement of the property, upon defendant's consent that "the houses should be sold separately," the presence of the owner at the sale, his making no opposition thereto, nor to the purchasers taking possession, and upon Art. 480 of the Civil Code which provides that "the sale or gift of a house with all that is in it does not include the money nor the credits nor other rights which may be in the house; all other movable effects are included."

He referred the court to Articles 468, 2489, 2490 of the Civil Code; to *Merlin Repertoire de Jurisprudence verbo "Accessoire,"* p. 109.; to Fink vs. Brigaldi, 4 Daly (N. Y.) 359; to Sewall vs. Angerstein, 18 Law Times N. S., 300; to Johnson's Executor vs. Wisemans Exec., 4 Metcalf (Ky.) 357; to Marcade, Vol. II., p. 333, *et seq.,* and to Mackie vs. Smith, 5 Ann. 717.

Appellee referred the court to Articles 468, 469 of the Civil Code; 5 Vol. Laurent, §434, pp. 539-540, 543; also 5 Vol., p. 547, par. 441, Cassation, 17 January, 1859; 5 Laurent, 578; Sacre vs. Klein, Sirey, 80, I. 409, Sirey, 59, I. 519, Id. 78, I. 353, Id. 80, 2, 332; Kerecht vs. Philharmonic Society, 79 Penn. State 403. Vaugh vs. Halderman, 33 Penn. State 522. Rogers vs. Crow, 10th Missouri, 91. Towne vs. Fiske, 127 Mass. 125. Guthrie vs. Jones, 108 Mass. 191. Keage vs. Hanover Ins. Co. 81 N. Y. 38. Same vs. Same, 37 Anl. Rep. 471. Montegut vs. Lent, 10 Rich. S Car. Rep. 135. Fink vs. Brigaldi, 4 Daly (N. Y.) 359; Harper vs. Commercial, etc., 15 La. Anl. Reports, 136, and Lapeyre vs. McCann, 28th La. Anl. 749.

## Opinion.

The third opponent's claim to the ownership of the articles seized in this case by the plaintiffs is, by virtue of having become the owner of certain real estate, sold at sheriff's sale, under executory process, at the suit of holders of notes bearing mortgage upon the same. The properties sold belonged, some of them to *W. C. Fulham,* others to his son, *W. F. Fulham.* Some of the articles seized by L'Hote and Co. were at the time of the sheriff's sale, in the houses belonging to the son, but all of them belonged to the father.

The properties were at the time of the sheriff's sale, under lease to different persons.

They are not before the court and the case is submitted to us freed from examination as to what their rights as lessees are or would be in the premises. The only parties before us are the third opponent

and the seizing creditors, and the only issue raised and to be decided is one of ownership.

The rights of the third opponent are to be tested, by what he acquired at the sheriff's sale, made in enforcement of the two sets of mortgages.

We find nothing in the record which would estop either W. C. Fulham or his creditors from claiming the actual ownership to be in the former, if such was the actual fact.

The circumstance that the different properties were by consent sold separately from the others covered by the same mortgage, does not broaden the mortgage and make it include more on each separate property, than would have been included in it had the property mortgaged been sold in entirety as mortgaged, nor does the presence of W. C. Fulham at the sale cause any difference in the rights and obligations of parties from what they would have been had he been absent. If the purchaser at the sale obtained everything that the mortgage legally called for, he can have no grounds of complaint. The case is not one showing a sale of house "with all that is in it," and therefore Art. 480 of the Civil Code has no bearing upon the rights of parties.

Third opponent relies upon the provisions of Articles 468 and 469 of the Civil Code.

The first, Article 468, declares that "things which the owner of a tract of land has placed upon it for its services and improvement are immovable by destination. Thus, the following things are immovable by destination, when they have been placed by the owner for the service and improvement of a tract of land, to-wit:     *     *     *     "All such movables as the owner has attached permanently to the tenement or the building are likewise immovable by destination."

The second, Art. 469, declares that "the owner is supposed to have attached to his tenement or building forever such movables as are affixed to the same with plaster or mortar, or such as can not be taken off without being broken or injured, or without breaking or injuring the part of the building to which they are attached." The cabinet mantel pieces seized are movable beyond question, not being attached to the building.

The chandeliers and brackets placed in the houses of W. F. Fulham are also moveables, not having been placed therein by the owner *of the property itself*. The only articles seized as to the ownership of which

there can be any serious question are the chandeliers and the brass brackets in the houses which belonged to W. C. Fulham.

Opponent's counsel refers us to the case of Mackie vs. Smith, 5 Ann., 717, as holding that the cases specified in Article 460 of the present Code can not be construed, as limiting the general disposition of the law, but that the article "embraces all cases in which the movables have been placed by the owner *ad integrandum domum.*

The questions propounded by him to the different witnesses were directed to showing that there were gas pipes connected with the different buildings; that the chandeliers and brackets were attached to these pipes and gas could not be used in the buildings without them; that the chandeliers and brackets were placed in the buildings for their use and improvement and most of them were in the leased premises, before they were leased and placed there for the use of the tenants. The evidence showed that the chandeliers were screwed on to the gas pipes as usual and customary, but they were capable of being detached by unscrewing and taken away without breaking or taking away the pipes or defacing the walls.

Two of the witnesses stated that the chandeliers were necessary for the use of the buildings in order to use gas, while another stated that drop lights might be substituted for them, that these particular chandeliers might be replaced by others.

Counsel for the seizing creditors insists that in order to immobilize movables in a dwelling house by means of destination, it is necessary that there should be a permanent attachment of the same to the buildings; that the Code in Art. 460 had declared what was considered a permanent attachment. That it said in substance that things permanently attached are:

1st. Those which are affixed to the building with plaster or mortar.

2nd. Such as can not be taken off without being broken or injured.

3rd. Such as could not be taken off without breaking or injuring the part of the building to which they are attached.

He contends that even if this law be not restricted (as contended by Laurent, and other commentators) to the exact kind of attachment specifically declared by it, it could not be construed so as to cover any sort of attachment less durable or permanent than those it did specify.

The *syllabus* in the case of Mackie vs. Smith, referred to by opponent, is to the effect that "where mirrors have been set in the wall by making recesses therein, which recesses would be left in their rough

state if the mirrors were removed, they would be considered attached permanently to the building and are included in a sale of the building."

The property in that case had been sold at a judicial sale for the purpose of making a partition among the heirs in the succession of Benjamin Story.

The report of the case shows that after Mr. Story had purchased the mirrors, recesses four and a half inches deep were cut in the walls of the room to receive them; that they were placed in these recesses and secured in their places by means of architraves or large wooden frames, which were nailed to plugs of hard wood fastened to the wall.

The frames of the mirrors had grooves in them corresponding to a tongue in the architrave and nails were driven from one to the other to make the glass more secure. The recesses were left rough and unfinished; the glasses and architraves clearly intended as a permanent furnishing of the wall.

The court in its opinion said it had only to enquire whether under the Article 459 of the Code (new Art. 468) the mirrors had been attached permanently to the building by the deceased; that if they were, the purchaser had acquired them.

That it was shown that they could be removed without being broken or injured.

That it was contended that they might have been removed without breaking or injuring the part of the building to which they were attached and that as the case came under none of the provisions of Art. 460 of the Code (new Art. 469), the judgment of the District Court adverse to the claimed rights of the purchaser should be affirmed.

The court said on this latter question of fact the testimony was conflicting and that if the cases specified in Art. 460 could be construed as limiting the general disposition of the preceding Article, it would have paid great deference to the opinion of the district judge, but it did not think that interpretation could be sustained.

That Art. 459 provided that all such movables as the owner had attached permanently to the building are immovables by destination; that it embraced all cases in which the movables had been placed by the owner *ad integrandum domum,* and when none of the presumptions established by Art. 460 exist, the fact might be shown by any competent evidence, citing Toullier, p. 8, No. 16; 4 Duranton, p. 63, No. 68.

The court said it was difficult to find a case more strictly falling within the letter and spirit of Art. 459 of the Code. That the Code of France provided that if a niche is made in a wall to receive a statue placed there, though in no manner attached to the building, it became immovable by destination; and such it thought was the Roman law.

That the case presented was a stronger one for the application of the rule.

Holding that the mirrors passed to the purchaser of the building the Supreme Court reversed the judgment below.

The facts of the cited case were much stronger for the purchaser than are those of the present one.

The mirrors as placed in the rough recesses made in the wall were practically embodied in and formed part of the building itself, and the court not only reached that conclusion but also the conclusion that such had been the intention of Mr. Story, that he had not contemplated a removal of the mirrors from their assigned place, but fixed them there as a permanency. We do not think there is a fair parallelism between that case and the one at bar, either as to the intentions of the owner in placing the movables in the building, in the mode which they were attached thereto, or their situation after they were so attached.

Chandeliers and brackets, so far from being attached to gas pipes and to the walls of buildings, with reference to their remaining there permanently, are prepared with direct reference to facility of detachment, and removal. It is true that when there are gas pipes connected with a building and the occupants of the house desire to make use of the same, that some means have to be resorted to to make use thereof, but chandeliers are not the only means of doing so, and when they are used they are so arranged, as to be susceptible of easy change or alteration.

Neither the chandeliers themselves, the pipes with which they are connected, nor the walls through which the pipes are passed, are in the slightest degree injured by their removal. The only object for their attachment to the pipes to which they are joined, is to enable them to be utilized for the time being, just as fastenings of various kinds have to be resorted to, to hold different movable objects temporarily in position for present use.

We think that jurisprudence generally recognizes that chandeliers,

placed in a dwelling house by the owner thereof, are movables, though in order to be made use of they have to be connected with pipes which are themselves considered immovable by destination.

That is our own interpretation of the law.

For the reasons assigned the judgment appealed from is hereby affirmed.