On Rehearing.
MONROE, C. J.
[4, 5] By the term's of the order granting the rehearing, the present inquiry is restricted to the question of the status of the combination gas and electric light fixtures. Counsel for defendant call attention to the following admission, made on behalf of plaintiffs, which appears of record, to wit:
“It is admitted that these fixtures, all of which are being sued for in this action, were installed in the house, by the owner thereof, for the service of the house and the use of the occupants.”
And it is argued that,. the meaning of the admission being that the fixtures were installed by the owner, for the service of the house and the use of the occupants, whether owner, vendee, or tenants, the effect is to give to the fixtures the status of immovables by destination, no matter whether they are attached to the house, permanently or otherwise. Considering the fixtures by themselves, however, it is not altogether clear that the argument is well founded. Reproducing article 468 of the Civil Code, for the purposes of the present inquiry, it will be seen that it reads as follows:
“Art. 468. Things which the owner of a tract of land has placed upon it for its service and improvement are immovable by destination.
“Thus the following things are immovable by destination when they have been placed by the owner for the service and improvement of a traot of land, to wit: Cattle intended for cultivation. Implements of husbandry. Seeds, plants, fodder, and manure. Pigeons in a pigeon house. Beehives. Mills, kettles, alembics, vats, and other machinery made use of in carrying on the plantation and works. The utensils necessary for working cotton and saw mills, tafiia distilleries, sugar refineries and other manufactories.”
“All such movables as the owner has attached permanently to the tenement or to the building are likewise immovable by destination.”
(Italics by the court.)
It will be observed that the article begins with the declaration that, “Things which the owner of a tract of land has placed upon it for its service and improvement are immov *927 •able by destination;” that the word “things” is used without qualification as to the character of the things, and the word “placed” with no other qualification than that the “things” are to be placed upon “a tract of land,” by the owner of the land, for its service and improvement. And the idea thus conveyed is emphasized in the second paragraph of the article, which purports, not to limit, but merely to illustrate, the character of the things contemplated by the first paragraph, and repeats the declaration that they “are immovable by destination when they have been placed by the owner for the service and improvement of a tract of land.”
The next paragraph seems, however, to provide an exception to the comprehensive rule established by those which precede, for, notwithstanding that it follows the words “Thus,” and “to wit,” which are contained in the second paragraph, and would otherwise be governed by the rule applied to the “things” which are therein mentioned, it contains the specific declaration, '“All such movables as the owner has attached, permanently, to the tenement or to the building are likewise immovable by destination,” which is equivalent to saying that the preceding declarations, though apparently broad enough to include anything placed on a tract of land, in any imanner, by the owner of the 'land, for its service and improvement, and certainly broad enough to include any “machinery made use of in carrying on the plantation and works,” and any “utensils necessary for working cotton mills * * • and other manufactories” so placed by the owner, was not intended to include movables which the owner has attached “to the tene■ment or to the building,” and which become immovable by destination only when attached “permanently”’ to such “tenement” or “building.” The word “tenement,” as thus used, is readily understood. The meaning of the word “building” is not so clear, and may have been used either as a synonym for “residence,” or as applicable to any building other than the mills, distilleries, refineries, and other manufactories mentioned in the preceding paragraph.
The lawmaker then specifies the circumstances under which the owner shall be considered to have attached, permanently or “forever,” movables to his tenement or building so as to make them immovable by destination, viz.:
“Art. 469. The owner is supposed to have attached to his tenement or building forever such movables as are affixed to the same with plaster, or mortal-, or such as cannot be taken off without being broken or injured, or without breaking or injuring the part of the building to which they are attached.”
Another exception to the general rule enunciated in article 468 is declared in article 476, as follows:
“Art. 476. Materials arising from the demolition of a building, those which are collected for the purpose of raising a new building, are movables, until they have been made use of in raising a new building. But if the materials have been separated from the house or * * * edifice, only for the purpose of having it repaired or added to, and with the intention of replacing them, they preserve the nature of immovables, and are considered as such.”
From which it follows that, whilst old material intended for the service and improvement of the land in the reconstruction of an old building is immovable by destination, new material intended for the service and improvement of the land in the erection of a new building does not acquire that status until actually used in the building.
In Mackie v. Smith, 5 La. Ann. 717, 52 Am. Dec. 615 (as appears from the opinion handed down), it was held that mirrors which had been set in recesses cut 4% inches deep in the walls, and the removal of which would have left the recesses rough, unfinished, and at variance with the obvious design of the architect, constituted the permanent finish of so much of the walls, and hence were parts of the house. The court said:
*929 “The plaintiff alleges and has shown that at a previous sale of the movable effects of the succession the mirrors were adjudicated to her, hut, as the knowledge of that fact is not brought home to the defendant, we have only to inquire whether, under article 459 [now article 468] of the Code, they had been attached permanently to the building by the deceased. If they were, the defendant [who purchased the house] acquired them.”
In Folger v. Kenner, 24 La. Ann. 436, it was held that an iron safe that had been built as part of the house had become immovable by destination, and that plaintiff had no more right to remove it than to remove “a mantelpiece from the drawing room.”
In L’Hote & Co. v. Fulham, 51 La. Ann. 780, 25 South. 655 (also considered in the opinion handed down), the sole question decided was that gas chandeliers and brackets had not become immovables by destination. The court, after reviewing the facts and conclusions stated and reached in Mackie v. Smith, said:
“The facts of the cited case were much stronger for the purchaser than are those of the present one. The mirrors as placed in the rough recesses made in the wall were practically embodied in and formed part of the building itself, and the court not only reached that conclusion, but also the conclusion that such had been the intention of Mr. Story, that he had not contemplated a removal of the mirrors from their assigned place, but fixed them there as a permanency. We do not think there is a fair parallelism between that case and the one at bar, either as to the intentions of the owner in placing the movables in the building, in the mode [in] which they were attached thereto, or their situation after they were so attached. Chandeliers and brackets, so far from being attached to gas pipes and to the walls of building's, with reference to their remaining there permanently, are prepared with direct reference to facility of detachment and removal. It is true that, when there are gas pipes connected with a building, and the occupants * * * desire to make use of the same, some means have to be resorted to to make use thereof, but chandeliers are not the only means of doing so, and when they are used they are so arranged as to be susceptible of easy change or alteration. Neither the chandeliers themselves, the pipes with which they are connected, nor the walls through which the pipes are passed are in the slightest degree injured by their removal. The only object for their attachment to the pipes to which they are joined is to enable them to be utilized for the time being, just as fastenings of various kinds have to be resorted to to hold different movable objects temporarily in position for present use.”
In considering the conclusion thus reached, however, we must assume that the chandeliers and brackets to which the court refers were’independent articles, having no connection with anything else that the owner had put into the house save the pipes, from which they could be unscrewed; whereas in the instant case those things, in so far as they were intended for the illumination of the house by the use of gas, were component parts of a plant established in the cellar of the house for the manufacture of gas, and, in so far as they were for the use of electricity, were accessories of the electric light plant established by the same owner in the nearby sugar house, and with reference to which he had established them in the house. Those plants were indisputably immovables, and it does not appear to us that it would be reasonable to hold that they can be dismembered and their utility destroyed by the withdrawal, on the ground that they are movables, of those parts through which, alone, they can render the service for which th'ey were established. As well might it be said that the cocks can be removed from the water pipes, or the steam and water gauges from the engine which supplies the house with heat, or that any other essential part of a plant the whole of which is an immovable can be converted into a movable merely because it can be unscrewed.
“The obligation of delivering the thing,” says the Civil Code, “includes the accessories and dependencies, without which it would be of no value or service, and likewise everything that has been designed to its perpetual use.” C. C. art. 2490.
The doctrine of the case of Receivership of the Augusta Sugar Co., 134 La. 971, 64 South. 870, is without application' here. The question there was whether a vendor could enforce his lien upon particular pieces of *931 machinery which he was able to identify, but which had become immovable by destination, and which could not be withdrawn without disabling the sugar factory of which they had become parts. The majority of the court conceded that the machinery had become immovable by destination, but were of opinion that the right of the vendor to enforce his privilege was not thereby affected. The question here is, whether the vendor of immovable property, or those claiming under him, can recover from his vendee an essential part or accessory of that property on the ground that it was not included in the sale. Our conclusion is that he cannot.
It is therefore ordered that the decree heretofore entered in this case be reinstated and made the final decree of the court.
O’NIELL, J., dissents.