(69 South. 800)

No. 20491.

COGUENHEM v. TROSCLAIR (LAUREL GROVE CO., Intervener).

(June 25, 1915. On Rehearing, Oct. 18, 1915.)

*(Syllabus by Editorial Staff.)*

1. ESTOPPEL ⬅98 — EQUITABLE ESTOPPEL—SILENCE — FORECLOSURE SALE — PROPERTY NOT MORTGAGED.

Where a mortgagor permits property to be sold under foreclosure, he is estopped from thereafter questioning collaterally the legality of the sale, but his creditors are not so estopped, and if property not covered by the mortgage be sold under it, it does not pass as against creditors.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 290; Dec. Dig. ⬅98.]

2. MORTGAGES ⬅133 — APPURTENANCES—IMMOVABLES—TRAMWAY.

Where two plantations connected by a tramway on a servitude of way over other plantations are mortgaged, they are mortgaged together with the servitude and the tramway, which is an immovable adjunct, and a foreclosure of the mortgage takes with it the tramway.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 260, 264, 265; Dec. Dig. ⬅133.]

3. EASEMENTS ⬅3 — SERVITUDE OF WAY—CHARACTER.

A servitude of way is an accessory of the plantation to which it is attached, and can pass only by means of the plantation, and is an adjunct of the estate, and not of its owner.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 8–12; Dec. Dig. ⬅3.]

4. EASEMENTS ⬅24—SERVITUDE OF WAY—TRAMWAY—IMMOBILITY.

Although a servitude of way is not perpetual, a tramway laid upon it is an immovable, as is the servitude, for the period of the servitude.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 64–69; Dec. Dig. ⬅24.]

5. FIXTURES ⬅26—TRAMWAY—LOCATION.

Under Civ. Code, art. 468, to become an immovable, and pass with the estate, it is not essential that the tramway be laid upon the land of the estate, but it is sufficient if it be attached by attachment to a servitude running to the estate.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. § 2; Dec. Dig. ⬅26.]

On Rehearing.

*(Syllabus by the Court.)*

6. EASEMENTS ⬅3, 38—SERVITUDE OF PASSAGE—ACCESSORIES—CONVEYANCE.

Where two sugar plantations, some distance apart, having the same owner, are operated as one, with but one factory, and are connected by a train built upon a right of way, secured by contracts from the owners of the intervening lands, such contracts create a servitude of passage or way which passes with the plantations when sold, and the ties and rails pass also as the accessories provided for and necessary to the enjoyment of the servitude.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 8–12, 61, 62, 114–116; Dec. Dig. ⬅3, 38.]

7. EASEMENTS ⬅38—SERVITUDE OF PASSAGE—ACCESSORIES—TITLE.

The creation of a servitude of passage is an alienation of one of the elements of ownership of the estate upon which the servitude is imposed, and, where the owner of the estate to which the servitude is due places upon the physical property, called the "right of way," the means or accessories which are necessary to the enjoyment of the servitude, it cannot be said that he has placed them upon the property of another, in the sense that, when so placed, they are not covered by and included in the title of the estate to which the servitude is due.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 61, 62, 114–116; Dec. Dig. ⬅38.]

Appeal from Twentieth Judicial District Court, Parish of Lafourche; W. P. Martin, Judge.

Action by Manuel Coguenhem against L. A. Trosclair, in which the Laurel Grove Company intervenes. Judgment for intervener, and plaintiff appeals. Affirmed, and on rehearing reaffirmed.

H. G. Bloch and C. F. Borah, both of New Orleans, and Beattie & Beattie, of Thibodaux, for appellant. J. A. O. Coignet, of Thibodaux, and Foster, Milling, Brian & Saal, of Franklin, for intervener.

PROVOSTY, J. There being a sugar factory and a tramway system on the Laurel Grove plantation fronting on Bayou Lafourche, the owners of the plantation extended the tramway about a mile across six plantations likewise fronting on Bayou Lafourche and belonging to other persons; the object being to facilitate the transportation of cane to the factory. For making said extension they obtained a servitude of way across these plantations. Shortly thereafter they acquired the most distant of them, the Enterprise. This was some 19 years before the origin of the present controversy, and said tramway across said plantations has been used regularly ever since in transporting cane to said factory.

The two plantations, Laurel Grove and Enterprise, were sold at private sale to L. A. Trosclair, the defendant in this suit. By him they were mortgaged to Le Bourgeois & Bush. At the foreclosure sale of this mortgage they were adjudicated to J. C. Le Bourgeois; and by him, two days later, were sold to the intervener in this suit, the Laurel Grove Company. About two weeks thereafter the plaintiff in this suit caused execution to issue upon a judgment which he had obtained against the said L. A. Trosclair, and caused the cross-ties and steel rails composing that part of said tramway which is upon the five plantations intervening between the Laurel Grove and Enterprise to be seized. The intervener, the Laurel Grove Company, intervened in the seizure, claiming that said tramway was an accessory and dependency of said plantations, and, as such, passed with them to Le Bourgeois at the foreclosure sale, and passed to it, the intervener, at the private sale made to it by Le Bourgeois.

The said foreclosure proceeding was by executory process; and the only property that can be seized and sold in an executory process is the property covered by the mortgage that is being foreclosed. Plaintiff contends that the part of said tramway that has been seized in this suit was not covered by said mortgage, and therefore was not sold. For this he assigns two reasons: First, that the act of mortgage makes no mention of any servitude of way or of any tramway; and, second, that the part of said tramway not situated upon the said two plantations, but upon the five intervening plantations, is a movable, and hence was not susceptible of being mortgaged.

The learned counsel of plaintiff quote authority (State v. Mexican Gulf Railway, 3 Rob. 513; Woodward v. American Exposition Co., 39 La. Ann. 569, 2 South. 413) to the effect that a railroad laid upon land not belonging to the owner of the railroad is a movable; and they quote the Civil Code and French authorities (articles 468, 469; Marcadé on Art. 525, C. N.; Toullier, Ls. 2, tit. 1, c. 1; Laurent, p. 453 (volume not stated); Duranton, Lw. 2, T. 1, § 2; Caen, 1st April, 1879–1880; J. of P. p. 1236; Toulouse 15th of May, 1879–1880, J. of P. 1238) to the effect that, in order that a movable should become an immovable by destination, it must be placed on, or attached to, the realty permanently; and they argue that, even if this servitude of way could be considered as realty, and forming part of the two plantations (which they do not admit), still that part of said tramway not situated upon said two plantations could not be considered as having been attached to same permanently, because the said servitude of way was itself not permanent, but only temporary, it, in fact, being about to expire in the case of one of the five plantations.

In the act of mortgage by L. A. Trosclair to Le Bourgeois & Bush, under which the foreclosure sale took place, the property mortgaged was declared to be the Laurel Grove and Enterprise plantations, "with all the buildings and improvements thereon,"

and the metes and bounds were given. No mention was made of any servitude or tramway. But in the act of sale to L. A. Trosclair the servitudes and tramways were specifically mentioned, and they were specifically mentioned at every step in the foreclosure proceedings, to wit: in the petition; in the order for foreclosure; in the advertisement; in the sheriff's deed; and in his return upon the writ.

[1] Intervener contends that the order of seizure and sale, which specifically mentions this servitude and tramway and orders them to be seized and sold, is a judgment, the correctness of which cannot be inquired into collaterally, and that said judgment and the sale made thereunder cannot be ignored, and a direct seizure made of said property, as if there had never been any judgment, seizure or sale.

Considering that said servitude and tramway were, as a matter of fact, ordered to be seized and sold, and were seized and sold to satisfy a debt of Trosclair, the owner thereof and the defendant in the executory process, and that the price thereof went actually towards satisfying his debt, and considering that he stood by and made no objection to said sale, it may well be that he would now be estopped from raising the question which the plaintiff is now raising, as to whether the said things were not movables, and therefore not susceptible of being mortgaged, and, as a consequence, were not included in the said sale. But these reasons for estoppel would not apply to the plaintiff, a creditor of Trosclair; and, as to such a creditor and all other third persons, we prefer to adhere to the rule that at a sale made in foreclosure of a mortgage property not covered by the mortgage does not pass. Jones v. Lake, 43 La. Ann. 1024, 10 South. 204; Dauchite Lumber Co. v. Lane & Bodley Co., 52 La. Ann. 1937, 28 South. 232. The case has to turn, therefore, upon whether said things were immovables and were included in the mortgage.

[2] We think they were. The two plantations were unquestionably intended to be mortgaged just in the condition in which they were, that is to say, with this tramway connecting them; and hence the contention of plaintiff must be that this tramway was not included in the mortgage, not because it was not specifically mentioned as being included, but because, it being movable, it could not be included; in other words, that no matter how much the parties may have desired and intended to include this property in the mortgage, they could not do so, because it was a movable, and formed no part of the plantations. This tramway was an improvement added to the plantations, increasing, and materially, doubtless, their value. Now, it would be an unbusinesslike and unreasonable or senseless law which would not allow these two plantations to be mortgaged thus connectedly, together with this improvement adding to their value, but only disconnectedly, without this valuable and important improvement. The learned counsel for plaintiff would have to concede, and do virtually concede, that the servitude of way followed the plantations; and hence their contention has to be that, while the servitude did, the tramway, by which alone it was useful or could be exercised, did not. Our law of mortgage is not thus defective; it is open to no such imputation and reproach as this.

[3] The servitude of way as well as this railroad by which it was to be exercised were accessories and dependencies of the plantations, or at least of one of them, and passed with them. The servitude of way is due not to the owners of the plantation, but to the plantation itself. C. C. 646, 651. It is an accessory of the plantation. C. C. 652. It can pass only "by means of the" plantation. C. C. 654. "Servitudes being essentially due from one estate to another for the advantage

of the latter, they remain the same as long as no change takes place in regard to the two estates, whatever change may take place in the owners." C. C. 653. In other words, the servitude is part and parcel of the estate to which it is due, and, as such, accompanies it when the latter is mortgaged or sold. It passes with the estate. C. C. 2011. As an accessory to an immovable, it is an immovable. C. C. 3289. So much for the servitude. Now as to the tramway.

When the owners of the Laurel Grove plantation laid this tramway for the exercise of this servitude, they did so with the intention that it should remain affected to that use as long as the servitude lasted. Thereby they made it an accessory of the servitude, and, as such, an immovable like the servitude. The accessories of an immovable are considered as immovables. C. C. 3289. It became an immovable for the same reason for which the servitude itself is an immovable, as being an accessory to an immovable. C. C. 471. If such a thing were possible as the sale of this servitude separately from the two plantations, and such a sale were made, the servitude would unquestionably carry with it this tramway designed for its exercise. Why? Because designed to its perpetual use, and by operation of the principle enunciated in articles 2461 and 2490 of the Code:

"Art. 2461. The sale of a thing includes that of its accessories, and of whatever has been destined for its constant use, unless there be a reservation to the contrary."

"Art. 2490. The obligation of delivering the thing includes the accessories and dependencies, without which it would be of no value or service, and likewise everything that has been designed to its perpetual use."

[4] From the fact that in order that a movable should become immobilized by destination its attachment to the real estate must be permanent the learned counsel for plaintiff argue that this tramway could not be considered as attached to said plantations permanently, since the servitude of way was only temporary; it, in fact, being about to expire as to one of the plantations.

The answer to this argument is that the destination of this tramroad to the uses of this servitude of way was intended to be as permanent as the servitude itself, and that as long as the servitude continued to exist this tramroad as an accessory to the servitude continued to be of the same character. The permanence of attachment required for the immobilization of a movable is not the permanence of perpetuity or eternity. In Morton Trust Co. v. American Salt Co. (C. C.) 149 Fed. 543, Bandry-Lacantinerie, Droit Civil, des Biens, vol. 5, p. 59, is quoted by Judge Parlange, as follows:

"All the objects attached to a fundus by the owner for its service and exploitation are by that fact alone immovables by destination, whether they are placed there forever or not. * * * All movable objects also become immovables by destination, which an owner has attached to his fundus forever in another interest [the author meaning an interest other than the service and exploitation of the fundus]; such, for instance, as a purpose of utility to or ornamentation of the fundus. Therefore perpetuity does not seem necessary except when the immobilization takes place in an interest other than the agricultural or industrial benefit of the fundus."

The legal notion of immobilization by destination is expounded by Demolombe, de la Distinction des Biens, vol. 9, p. 109, Nos. 199 and 200, as follows:

"Are called immovables by destination things movable by nature which have been placed by the owner permanently in a fonda [called fundus by Judge Parlange in the opinion hereinabove cited and translated into our Code by the equivalent words, 'tenement or building'] to be its accessories or dependencies.

"Such, if I may so express myself, is the mother idea of this whole matter.

"The point is that the movable is attached permanently, at least in the intention of the owner, to the immovable, associated with its destiny, to be leased, sold, expropriated with it, donated or bequeathed with it, in a word, to be from henceforth considered not separately, isolatedly, in its individuality as a movable, but, on the contrary, in its union with the fundus itself, as a dependency or accessory of this fundus.

"And hence this destination, and especially this perpetuity of the destination which thus unites the movable with the immovable, which merges them in the same hand, to remain always together, in such way that the person who shall have the immovable shall by reason of that fact alone have the movable also, this permanent perpetual destination fictively imparts to the movable the immobile nature of the fundus.

"A fiction well justified, besides, in the nature of the fact itself, and in which the private interest of the owner, as well as the general interest of society, and especially of agriculture and industry, find equally the satisfaction due them.

"Indeed, evidently, the immovables, left to themselves, all naked, if I may be allowed so to express myself, could not render us the services we ask of them, in the social conditions in which we live, in the condition of our habits and customs, commercial and industrial.

"They must therefore be furnished, be clothed, with certain movable objects that are indispensable in order that their destination may be accomplished; in order that this soil may produce crops, that this factory may operate, and this house may be habitable; and hence it is very rational to consider these movable objects as being accessories of the immovable, since the immovable, without them, would be altogether incomplete and insufficient, and could not fulfill the function that is assigned to it in the order of our needs."

How apposite and directly applicable all this is to the present case needs hardly to be pointed out. This servitude of way without this tram upon it would be nothing; the tram is an essential part of it. As well have a plantation without houses, labor, mules, or carts, or all naked, as Demolombe says, as have this servitude of way without this tram.

[5] It is also argued that this tram is not upon the plantations. The requirement of the Code (article 468) is not necessarily that the movables be "upon" the tenement, but it suffices that they be "attached" thereto; and, of course, this attachment need not be physical. Marcadé, Com. on Art. 525, C. N. gives as an instance of an immovable by destination:

"Le bateau exclusivement destiné au passage des habitants d'une maison située sur le bord d'une rivière." A boat destined exclusively to the ferrying of the inmates of a house situated on the bank of a river.

137 LA.—32

In Railroad Co. v. Delamore, 34 La. Ann. 1225, a pavilion was held to be an immovable because "connected with plaintiff's land and for its exclusive use," though not on plaintiff's land, but upon the land of another person.

The Supreme Court of Bourges, France, has gone very far towards holding that a railroad is an immovable, even though laid on land merely leased. Bourges, March 22, 1867.

Said tramroad, being an immovable, part and parcel of the plantation, followed same under the said mortgage, though not specially mentioned, as is the case with all immovables by destination. Williamson v. Richardson, 31 La. Ann. 686; Rochereau v. Bobb, 27 La. Ann. 658; Weil v. Lapeyre, 38 La. Ann. 303; Hollingsworth v. Chaffe, 33 La. Ann. 547; Maginnis v. Union Oil Co., 47 La. Ann. 1489, 18 South. 459.

Judgment affirmed.

See concurring opinion of O'NIELL, J.; 69 South. 803.

### On Rehearing.

MONROE, C. J. Our re-examination of this case has confirmed us in the opinion that "all the railroad iron and all the railroad ties," constituting, with the roadbed, the tramway connecting Laurel Grove and Enterprise plantations, and seized by the plaintiff herein as the property of his judgment debtor, were acquired by the intervener in its purchase of those plantations, and hence that plaintiff's seizure was unauthorized and illegal.

[6, 7] It is admitted that the road was built in 1904 by the owners of Laurel Grove plantation, and that they afterwards acquired Enterprise plantation, and, further, that:

"The owners obtained rights of way from the different owners of these intervening lands, by rights of way duly recorded, terminating at dif-

ferent periods, none of which have yet terminated. This tramway has been used. continuously, by owners of the Laurel Grove plantation, since its construction up to the time of the seizure, for the purpose of delivering cane to Laurel Grove factory."

In the situation thus disclosed, the status of the road and the rights of the owners with respect thereto are governed by the provisions of the Code which have been cited in the opinion handed down, to which may be added article 731, which reads:

"It is not sufficient to be an owner in order to establish a servitude; one must be master of his rights and have the power to alienate, *for the creation of a servitude is an alienation of a part of the property.* \* \* \*" (Italics by the court.)

Reading the law thus cited and quoted into the contracts whereby the owners of the intervening lands created the servitude of way between and in favor of the plantations, it seems plain that the creation of the servitude was an alienation of one of the elements of ownership in the lands and the incorporation of that element in the title of the plantations, and that it passed with that title to the intervener.

Thus:

"Art. 722. The right of passage or way, is a servitude imposed by law or by convention. \* \* \* When it is the result of a contract, its extent and the mode of using it is regulated by the contract."

"Art. 652. A servitude is an incorporated [incorporeal?] right which cannot exist without the estate to which it belongs, and of which it is an accessory.

"Art. 653. Servitudes being essentially due from one estate to another for the advantage of the latter, they remain the same as long as no change takes place in regard to the two estates, whatever change may take place in the owners.

"Art. 654. Servitude is a right so inherent in the estate to which it is due, that the faculty of using it, considered alone and independent of the estate, can not be given, sold, let or mortgaged without the estate to which it appertains."

"Art. 2011. Not only the obligation, but the right resulting from a contract relative to immovable property, passes with the property. Thus the right of servitude in favor of immovable property passes with it."

"Art. 2461. The sale of a thing includes that of its accessories, and whatever has been destined for its constant use, unless there be a reservation to the contrary."

"Art. 3289. The following articles are susceptible of mortgage:

"1. Immovables subject to alienation, and their accessories.

"2. The usufruct of the same description of property with its accessories, during the time of its duration."

When, therefore, the owners of the plantations placed upon the physical property, called the "right of way," the ties and rails which, with such "right of way," were necessary to the enjoyment of the servitude of way, which servitude was inseparable from the plantations, the ties and rails became the accessories of the servitude, and it cannot be said that they were placed upon the land of another, in the sense that they were not covered by and included in the title whereby the plantations were thereafter held and conveyed.

The cases of State v. Mexican Gulf Ry. Co., 3 Rob. 513, and Woodward v. Railway Co., 39 La. Ann. 566, 2 South. 413, are therefore inapplicable, for in those cases it appeared that the railway companies were mere trespassers, and had acquired no servitudes or rights of way upon the lands occupied by them, either by operation of law, expropriation, or contract. On the other hand, the mortgage and sale of the plantations here in question having included the servitude of way and the road, with its equipment, whether of concrete, macadam, corduroy, clay, or ties and rails, being the means or accessories provided for and essential to the enjoyment of the servitude, it follows that the road, as equipped, was also included.

The decree heretofore handed down is therefore reinstated and made final.