HOOD, Judge.
Plaintiff, Cleveland Guillot, instituted this suit to compel defendants to return to him a tractor-type mowing machine, or in the alternative, to recover from defendants the value of that machine. The suit was instituted against the heirs of Amadeus *194 Adams, deceased. The trial court rendered judgment in favor of plaintiff, ordering defendants to return the mowing machine to plaintiff. Defendants have appealed.
Prior to January 17, 1966, Amadeus Adams, the father of defendants, owned a 162-acre tract of land in Acadia Parish. He lived and made his home in a residence building located on that property. For several years prior to the above mentioned date the entire tract of land, except for the residence building and surrounding lawn which Adams occupied as his home, was leased to plaintiff Guillot for farming purposes, and the latter had conducted rice farming operations on the leased property. Plaintiff furnished all of his own implements, machines and equipment for these farming operations. The lessor, Adams, furnished nothing in the way of farming equipment or tools.
On January 17, 1966 Amadeus Adams sold the entire 162-acre tract of land to plaintiff Guillot, but in the deed Adams reserved to himself a lifetime usufruct of the house in which he was living and the surrounding yard. He continued to occupy that house and the surrounding yard until his death occurred on May 30, 1966. His succession was opened and one of the defendants, Joseph Stacy Adams, was appointed as testamentary executor. In his capacity as executor, Joseph Stacy Adams went on the property and removed from it the tractor mower which is the subject of this suit, claiming that it belonged to the estate of the decedent. Plaintiff thereupon instituted this suit.
Plaintiff contends that on January 17, 1966, the tractor mower was an immovable by destination, under LSA-C.C. art. 468, and that ownership of the tractor was acquired by plaintiff when he purchased the land from the decedent on that date. Defendants contend that the mower was not an immovable by destination, that plaintiff did not acquire ownership of it and that the machine now belongs to the estate of the decedent.
The evidence shows that while Guillot was farming this property, and before it was sold to him, Adams purchased a small tractor mower for use in mowing the front and rear lawns of his homeplace. The machine was powered with an 8 horsepower gasoline engine, and it was constructed so that the operator could ride on it as he mowed the grass. The mower was made especially for cutting grass and it was not suitable for any other use. It could not be used for any kind of farming operations, not even for mowing hay, and no attempt was ever made to use it for any farming purposes.
Article 468 of the Louisiana Civil Code provides that “Things which the owner of a tract of land has placed upon it for its service and improvement are immovable by destination.” The article lists “Implements of husbandry” as one example of a type of movable which may become an immovable by destination if placed by the owner on a tract of land for the service and improvement of that land.
The trial judge concluded that the tractor mower was placed on the property “for its service and improvement,” that it became an immovable by destination, and that the ownership of the mower thus became vested in plaintiff when the latter acquired title to the land. Judgment was rendered ordering defendants to deliver the machine to plaintiff.
The “things” listed in LSA-C.C. art. 468 as being the types of movables which may become immovables by destination are merely illustrative and are not restrictive. Scovel v. Shadyside Co., 137 La. 918, 69 So. 745 (1915); LaFleur v. Sylvester, 135 So. 2d 91 (La.App. 3d Cir. 1961).
Article 468 of our Civil Code has as its source Article 524 of the French Code. In Planiol, Civil Law Treatise, English Translation by Louisiana State Law Institute, the following pertinent observations are made with reference to this source article:
“Why deem things to be immovable when they are in reality, movable ? There *195 is a practical reason for this. It was desired to obviate the separation from a fonds of things that are its compulsory accessories, zvhen such a separation is contrary to the will of the owner and detrimental to the general good. It is necessary that these accessories follow the fonds, in order that it may attain its maximum efficiency.” (Planiol, Vol. 1, Part 2, Sec. 2212, page 305.)
“Implements of Husbandry. — This provision is an innovation introduced by the Code. In the old law, the only agricultural materials deemed to be immov-ables were ‘wine-vats and other bulky implements’, ‘embedded in the earth’ or so attached to it that they cannot be easily removed (Pothier, Communauté, Nos% 49 and 50). Moreover, the provisions of Art. 526 apply solely to agricultural implements, property so called. They do not to garden tools. Unless there he exceptional circumstances, they are looked upon as forming part of the furnishings.1’ (Planiol, Vol. 1, Part 2, Section 2220, page 310.) (Emphasis added.)
In Aubry and Rau, Civil Law Translations, English Translation by Louisiana State Law Institute, we find the following comments relating to immovables by destination :
“The law considers sometimes corporeal movables as immovables, on the ground that they are accessory to an immovable without having become its integral part. This happens in two cases: when the movable has been put in by the owner of the land for the purpose of exploiting it, and when it has been permanently attached to the land (Art. 524, first and last par.).” (Aubry and Rau, Vol. 2, Sec. 164, page 19.)
“Art. 524, after defining generally the objects used in the service of exploiting land property, contains a long list of examples. Although these are merely examples, they comprise only agricultural and industrial exploitation, and even within this frame of reference, do not include materials destined for the relations of the enterprise with the outside. Therefore it has been discussed whether such materials are subject to conversion; and whether the rule of conversion applies to commercial enterprises in the narrow sense, that is non-manufacturing ones. If the materials are necessary to run the enterprise, the reason for conversion is the same as in the cases specified by the statute. But the element of necessity must exist. That may sometimes presuppose the adaptation of the immovable itself for the envisaged exploitation and the use of the movable equipment or materials.
“At any rate, the immobilization takes place only to the extent the movables are necessary for the exploitation.” (Aubry & Rau, Vol. 2, Sec. 17, page 20.) (Emphasis added.)
In Straus v. City of New Orleans, 166 La. 1035, 118 So. 125 (1928), the question presented was whether some of the machinery which had been located in a cotton mill had become immovable by destination. Although the case did not relate to farm lands, our Supreme Court made the following pertinent observations:
“It is true that the first paragraph of article 468 declares merely that things which the owner of a tract of land has placed upon it for its service and improvement, are immovable by destination’— which, unexplained, might, not include things which the owner of a manufacturing establishment has placed in it for its service and improvement; but the illustrations given in the subsequent paragraphs are made up of two distinct classes of things which thus become immovable by destination, viz: (1) Those which are used in the cultivation and exploitation of lands; and (2) those which are itsed in the operation of manufacturing establishments, such as cotton mills, sawmills, taffia or run distilleries, sugar refineries, ‘and other manufactures.’ ” (Emphasis added.)
*196 In Richardson v. Item Co., 172 La. 421, 134 So. 380 (1931), our Supreme Court stated:
“A movable becomes an immovable by destination when the owner unites it with lands, tenements, or buildings which are also owned by him, with the intention that the movable shall henceforth be merged and associated with the destiny of the realty.” (Emphasis added.)
It has been held that such items as showcases, an iron safe, a gun case, a settee and a heater which had been placed in the business offices of a mercantile company did not become immovables by destination. These items, the court said, had not been placed in the building “for the purpose of servicing or improving it, but rather for the convenience of the particular kind of business that was being conducted in it.” Day v. Goff, 2 La.App. 75 (La.App. 2d Cir. 1925).
Similarly, it has been held that two mares which “were used exclusively under the saddle and in harness, and not in the cultivation of the plantation,” did not become immovables by destination. Lapene & Jacks v. D. C. McCan & Son, 28 La. Ann. 749 (1876). Our brothers of the Second Circuit held that an automobile and some trucks placed on property where two oil refineries were being constructed did not become immovables by destination, because they “were not destined for the improvement or service of the land on which they were found,” and “they had none of the attributes of immobility by destination.” Willis v. Thomason, 1 La.App. 313 (La.App. 2d Cir. 1924).
In Coguenhem v. Trosclair, 137 La. 985, 69 So. 800 (1915), our Supreme Court quoted with approval from Demolombe, de la Distinction des Biens, the following :
“The point is that the movable is attached permanently, at least in the intention of the owner, to the immovable, associated with its destiny, to be leased, sold, expropriated with it, donated or bequeathed with it, in a word, to be from henceforth considered not separately, isolatedly, in its individuality as a movable, but, on the contrary, in its union with the fundus itself, as a dependency or accessory of this fundus.
“And hence this destination, and especially this perpetuity of the destination which thus unites the movable with the immovable, which merges them in the same- .hand, to- remain always together, in such way that the person who shall have the immovable shall by reason of that fact alone have the movable also, this permanent perpetual destination, fic-tively imparts to the movable the immobile nature of the fundus.”
“Indeed, evidently, the immovables, left to themselves, all naked, if I may be allowed so to express myself, could not render us the services we ask of them, in the social conditions in which we live, in the condition of our habits and customs, commercial and industrial.
“They must therefore be furnished, be clothed, with certain movable objects that are indispensable in order that their destination may be accomplished; in order that this soil may produce crops, that this factory may operate, and this house may be habitable; and hence it is very rational to consider these movable objects as being accessories of the immovable, since the immovable, without them, would be altogether incomplete and insufficient, and could not fulfill the function that is assigned to it in the order of our needs.”
Plaintiff refers us to Smith v. Bell, 224 La. 1, 68 So.2d 737 (1953), and LaFleur v. Sylvester, supra, in both of which cases it was held that farm implements which were used in cultivating the farm had become immovables by destination. The Sylvester case involved a “manure spreader” which was owned by the defendant, was kept on his 80 acre farm and was used by him in conducting farming operations. It clearly was being used for the cultivation *197 and exploitation of the land, while in the instant suit the mower was not used for those purposes. In Smith v. Bell, a number of farm implements, one of which was a “seven foot mowing machine,” were held to have become immovables by destination. Plaintiff contends that in view of that holding the mowing machine at issue in this suit also must be regarded as an immovable by destination. We are unable to determine from the opinion rendered in the cited case whether the seven foot mowing machine was used in cultivating or exploiting the land. No issue appears to have been raised as to whether it had been placed on the land for its service and improvement, and we assume that the court was not called upon to consider that question. We do not consider that case as authority for the argument that all mowing machines become immovables by destination when they are placed on a tract of land.
The evidence in the instant suit shows that the mowing machine purchased by the decedent was used solely for mowing lawns. It was not and could not be used for farming purposes. Mr. Adams used it principally for cutting the grass on the front and rear lawns of his homeplace. On some occasions he permitted one of plaintiff’s tenants to take the mower and use it to cut the grass on the tenant’s lawn. On one occasion he permitted plaintiff Guillot to take the mower to the latter’s home, which was not located on the 162-acre tract, in order that plaintiff might use it for mowing his own lawn.
A movable, such as an implement of husbandry or a farm machine, does not become an immovable by destination unless it was placed on the land by the owner for the service and improvment of that land. Where farm land is involved, we think this means that the implement must have been placed on the property for the cultivation and exploitation of that land. The implement must be of a type that is "necessary for the exploitation” of the land, and the circumstances must be such that it was the obvious intent of the owner that the movable was to be merged and associated with the destiny of the land.
The mowing machine which is at issue in the instant suit was not placed on this farm property for the purpose of cultivating and exploiting that land. A mower of that type was not needed for the exploitation of the property, and there is no basis for us to conclude that the owner intended for it to become merged and associated with the destiny of the land. It was easily movable, and the decedent used it at various places, on and off his homeplace, as he saw fit. We think it was used as a convenience to the owner and not as an accessory to the land.
If a power mower such as this should be held to be an immovable by destination, then it may necessarily follow that all lawn mowers, whether power driven or not, and all ordinary garden tools, such as rakes, hoes and spades, also must be classified as implements of husbandry and as immov-ables by destination. We do not think Article 468 of the Civil Code was intended to apply to these items.
Our conclusion is that the mowing machine which is at issue in this case did not become an immovable by destination, and that plaintiff did not acquire the ownership of it when he purchased the land. In our opinion the trial judge erred in ordering defendants to return the machine to plaintiff.
For the reasons herein assigned, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendants, rejecting plaintiff’s demands and dismissing this suit at plaintiff’s costs. The costs of this appeal are assessed to plaintiff-appellee.
Reversed.