SOMMERVILLE, J.
Mrs. Barnett was-one of the original plaintiffs in this cause; but, having died, her three sons and sole heirs, who were coplaintiffs with her, have-been made parties in her place.
J. W. Barnett, the husband and father of plaintiffs, erected a building upon Shadysideplantation, in the year 1808, in which he and his family lived. The house was very complete in all of its parts, and was elegantly furnished. 1-Ie mortgaged all of the property and its appurtenances; and subsequently he-sold the plantation, together with the residence, in 1903, to the Shadyside Sugar Company, of which he and his family were the principal stockholders. That company also-mortgaged the property and its appurtenances. It became involved, and was placed in the hands of a receiver, a sale took place under an order from the federal court, and the whole property was adjudicated to C. A. Farwell, who subsequently sold it to theShadyside Company, Limited, defendant in this cause, April 7, 1904. Mr. Barnett died August 7, 1904.
The mortgages and sales referred to were made by Mr. Barnett without reserving to-himself the household fixtures sued for by his heirs in this case.
Mrs. Barnett and some of her sons continued to live in the house until September, 1910. Subsequently they made demands upon the defendant company to turn over to them combination gas and electric light chandeliers and brackets which were in the house,, together with bathtubs, toilets, stationary washstands, a complete double outfit for heating purposes, a complete gas outfit, mantel pieces, and certain grillwork. This suit was-instituted therefor November 2, 1911.
*921 Defendant answered, denying that the articles referred to were the personal effects of plaintiffs, and alleged that they, the articles, had been permanently attached to the house, for the service and improvement thereof, by the owner, and that they were parts of the building, and that the building, as a residence, would be incomplete without them.
Since the filing of this suit the Legislature has declared that the things here sued for are immovable by their nature. Act No. 51 1912, p. 60.
[1-3] The evidence shows that the articles mentioned were placed in the house at the time it was erected by Mr. J. W. Barnett; and it is clear that his intention was that they should be permanently attached thereto for the service and convenience of the house and its occupants.
Article 468, G. C., is as follows:
“Things which the owner of a tract of land has placed upon it for its service and improvement, are immovable by destination. * * * All such movables as the owner has attached permanently to the tenement or to the building, are likewise immovable by destination.”
And article 469 provides:
“The owner is supposed to have attached to his tenement or building forever such movables as are affixed to the same with plaster, or mortar, or such as cannot be taken off without being broken or injured, or without breaking or injuring the part * * * to which they are attached.”
In considering the two articles just quoted, in the case of Mackie v. Smith, 5 La. Ann. 717, 52 Am. Dec. 615, we hold that two valuable mirrors found in one of the rooms of a dwelling house, which had been sold in that case, were immovable by destination.
We there say that the only matter before the court to decide is whether or not the mirrors had been attached permanently to the building by the deceased. If they had been, the purchaser of the house had acquired them. It was shown that they were not affixed to the building with plaster or mortar, and that they could be moved without being broken or injured. ' It was contended by the appellee that the mirrors might have been removed without breaking or injuring the parts of the building to which they were attached, and that, as the case would come under none of the provisions of the Code, the judgment in her favor should be affirmed. We there hold that the cases specified in article 469 do not limit the general disposition contained in article 468. Article 468 provides that all such movables as the owner has placed for the service and improvement of the land and those which are attached permanently to the building are immovable by destination: it embraces all cases in which the movable has been placed by the owner ad integrandum domum; and, when none of the presumptions established by article 468 exist, the fact may be shown by any competent evidence. 2 Toullier, No. 16: 4 Duranton, p. 63, No. 68.
In the Mackie Case it was shown that after the owner of the property purchased the mirrors recesses 4y2 inches deep were cut in the walls of the room to receive them; that they were placed in those recesses and secured in their places by means of architraves or large wooden frames, which were nailed to plugs of hardwood fastened to the wall. The frames of the mirrors had grooves in them corresponding to a tongue in the architrave, and nails were driven from one to the other to make the glasses more secure. The recesses were left rough and unfinished; the glasses and architraves being clearly intended as a permanent finishing of the walls. It is difficult to conceive a case more strictly within the letter and spirit of article 468 of the Code.
And it is shown in this case that Mr. Barnett, in having bathtubs, toilets, stationary washstands, radiators, mantelpieces, and grillwork placed in the house which he was then erecting, caused holes to be made in the ceilings, walls, and floors for the intro- *923 Auction of gas, water, and waste pipes with the view and intention of attaching all the fixtures permanently to the building, thereby, in the language of the Code, making them immovable by destination. The evidence further shows that the moldings in the rooms were cut for the placing of the stationary washstands; that the mantel pieces were made of wood and tiles; that the removal of these things would not only leave holes in the walls, ceilings, and floors, but that the rooms would be left rough, unfinished and in an injured condition; and that repairs would have to be made to the house. The same is true of the grillwork, claimed by the plaintiffs, and which was put in the openings or doorways leading from one room into another throughout the house, for the purposes of ornamenting and beautifying the same.
The complete double outfit for heating purposes and the complete gas generating outfit are established under the building, several feet below the surface of the earth. They were clearly placed there for the service of the house, and were connected with the fixtures in the house, and were to be used therewith permanently or so long as they might last. They were attached permanently to the building, and they are declared to be immovable by destination.
The combination gas and electric light chandeliers and brackets fall within the same category as do the other things mentioned above. It is argued on behalf of plaintiffs that gas chandeliers have been held by the court to be movables, and that they do not usually form part of the premises in which they have been hung. Reference is made to the decision of the court in L’Hote v. Fulham, 51 La. Ann. 780, 25 South. 655. The evidence in that case showed that the chandeliers were only used for lighting by gas, and that they were screwed on the gas pipes, as was usual and customary in the city of New Orleans, and that they were capable of being detached by being unscrewed and taken away without breaking or taking away the pipe or injuring the ceiling of the house. And we there hold that gas chandeliers, so far from being attached to-pipes and to the walls of buildings, with reference to their remaining there permanently, are placed with direct reference to the facility of detaching and removing; that the chandeliers themselves, the pipes with which they are connected, and the walls through which the pipes are passed are not in the slightest degree injured by their removal-But in the instant case the evidence shows that the chandeliers and brackets are combination gas and electric light chandeliers, and brackets, and that they were not prepared with direct reference to facility of detachment and removal. On the contrary, it is testified on the trial of this case that the electric wires which connect these chandeliers and brackets to the motor for generating electricity located in or near the sugar house on the plantation would have to be cut or broken to remove said articles; and this would leave exposed electric wires and holes in the ceiling and walls which would have to be repaired and the places be re-papered to make the house safe, complete, and comfortable. It is quite evident to our minds that the owner in this case had these fixtures permanently attached to the building in which he and his family were to live, and did live, and that he designed them for the service and improvement of the building.
The views which we have here expressed are in line with the French authorities, and were adopted in the case of Morton Trust Co. v. American Salt Co. (C. C.) 149 Fed. 540. We quote from this last decision, in part, as follows:
“There are two, and only two, ways in which an immovable by destination may be created:
“ ‘ (1) Without any physical attachment to the fundus, but merely by the dedication of the *925 movable to the service of the fundus. See Civil Code Louisiana, art. 468.
“ ‘(2) By means of a physical attachment affixing the movable permanently — a perpetuelle demeure. See Civil Code La., last paragraph of article 468.’
“The above is an extract from Plainol, Droit Civil (Paris Ed. 1904) vol. 1, p. 703.
“These two kinds of immovables by destination are plainly shown'by Civil Code Louisiana, art. 468 (459), in which instances of both kinds are given. See that article cited in full supra. It may be well to say here that the instances given in that article are clearly not restrictive.”
The court then proceeds to quote from Baudry-Lacantinerie, Droit Civil, Des Biens (Paris Ed. 1890), vol. 5, p. 59, as follows:
“ ‘All the objects attached to a fundus by the owner for its service and exploitation are by that fact alone immovables by destination, whether they are placed there forever or not. * * * au movable objects so become immovables by destination, which an owner has attached to his fundus forever in another interest [the author meaning an interest other than the service and exploitation of the fundus]; such, for instance, as a purpose of utility to or of ornamentation of the fundus. Therefore perpetuity does not seem necessary except when the immobilization takes place in an interest other than the agricultural -or industrial benefit of the fundus.’
“The same author, same work, and volume (page 56) states the essentials of immobilization to be: ‘(1) That the immovable was placed on a fundus, that is to say, an immovable by nature [either land or a building]; for the movable can only become an immovable by destination as being an accessory to the fundus. (2) That the movable was placed there in the interest of the fundus, that is to say, for its service, its exploitation, its utility or its ornament. (3) That it was placed there by the owner of the fundus. Immobilization by destination necessarily supposes the act of the owner. It could not result from the act of a lessee, a renter, or even a usufructuary. The reason is that immobilization by destination takes place in the interest of the fundus; and the owner is the sole representative of that interest.’ ”
We agree with the judge of the district court that the things sued for in this case were permanently attached to the house by the owner thereof for its service and improvement, and that they are therefore immováble by destination.
Judgment affirmed.
O’NIELL, J., dissents, and files reasons. See 69 South. 748.