PETTY v. JONES

(April 1, 1929. Opinion and Decree.)

Alexis Bryan, of New Orleans, attorney for plaintiff, appellant.

J. Warren Woodville, of New Orleans, attorney for defendant, appellee.

JANVIER, J. This is a suit by a sub-contractor against the owner of the property in and on which the work was done.

The main contract was between the owner, defendant here, and the Gaiennie Company, Ltd., and the work to be done was the furnishing and installing of a low-pressure, steam heating system, in the premises owned and occupied by defendant.

The main contract was not in writing, no bond was secured, and no recordation of any kind was made in the mortgage office.

The sub-contractor, plaintiff here, was employed by the main contractor to construct a heater pit, that is, a room slightly below the level of the ground floor in which the boiler itself, and the heating equipment was to be installed.

An exception of no cause of action was sustained by the trial court. The exception was based on three contentions:

That the furnishing and installing of a low-pressure, steam heating system does not come within the language of Act 139 of 1922, which makes the owner, who, does not require a surety, liable to the same extent as the surety would have been, where a contract is made and entered into "for the repairing, construction, erection, or the reconstruction of a building or other work."

The second contention is based on the fact that the plaintiff's petition shows, that although the work done by him was completed in November, 1923, he did not record his .lien in the mortgage office until August 13, 1924, and that his petition fails to show that the attested account was served within thirty days of the filing in the mortgage office of the acceptance by the owner.

The third contention is—that the plaintiff's petition fails to allege that the affidavit required was served on the owner, or the architect, or her representative.

We will first take up defendant's contention that there is nothing in the petition to show that the work in question, "the furnishing and installing of a low-pressure, steam heating system," was such as to entitle the contractor, sub-contractor, etc., to a lien on the property, or to a claim against the owner, even conceding that all of the necessary notices and affidavit had been properly served and on time.

The trial judge found that a steam heating system is no more an integral part of a building than a radio, frigidaire or phonograph. It is argued that the Court cannot take judicial notice of the fact that a steam heating system consists of a boiler and a burner which is located in one room, and pipes that run to all rooms in the building, with radiators located in all rooms and usually a specially constructed flue or chimney. Such an argument, we believe, does violence to the intelligence of the Court, and if sound, would require judges to eliminate from consideration, facts of which they have knowledge, not in regard to that particular case, but as a matter of general information.

If a petitioner alleges that as subcontractor he installed a roof on a building, we know that the roof is an integral part of the building, without any allegation in the petition to this effect. We, likewise, know that a steam heating system permeates the entire building, with pipes and fixtures, and that the installation thereof requires the cutting of holes in walls, ceilings and floors.

Regardless, however, of any knowledge that we may have, as to what constitutes a steam heating system, it is fair to assume that the contract contemplated by the sub-contract, which is attached to the petition, is work made necessary and required under the main contract.

This sub-contract requires the digging of a pit, the concreting of walls, the waterproofing of the walls, the construction of a wooden stair from the floor of the pit to the first floor of the building, the installation of a window and frame in the outside wall, all of which is work plainly contemplated by Act 139 of 1922.

It is true that this Court, in Dixie Building Material Company, Inc., v. Chartier, 8 La. App. 469, said:

"We are in accord with the defendant in holding that the Sunbeam Heater does not constitute 'materials,' which went into the building as part of it. The evidence is that the heater rests upon the floor like an ordinary stove and that its smoke pipe is inserted into a crock in the wall to

carry away the smoke. No part of the heater is attached permanently to the building with plaster, mortar or nails; it can be removed without breaking or injuring any part of the building."

A steam heating plant is entirely different from a "Sunbeam" heater, in that while a "Sunbeam" heater, as the Court said in the Chartier case, rests upon the floor, like an ordinary stove, and is not attached permanently to the building; the steam plant, on the other hand, is attached to the building in many ways, and upon installation becomes a part of the building itself.

Our conclusion is, that upon the first point urged, the exception of no cause for action is not well founded.

The second point is not so readily disposed of. Passing over, for the moment, the question raised by the third contention, as to whether the attested account was served on the proper person, we will first discuss the claim, that even if it be conceded that the petition shows that the account was served on the proper person, it does not show that it was served within the time limit set by the statute.

The act requires that the account be served "within thirty days after the registry of the notice with the recorder of mortgages, for the parish where the work is done, by the owner of his acceptance of the work, or of the contractor's default, or the recordation of the architect's certificate of completion, until which time the delay to file claims or privileges shall not run."

There is in the petition no allegation that the service of the account on the owner, or his architect, or his representative, was made within thirty days, nor is there an allegation that the owner, at any time, filed his notice of acceptance.

A casual reading of the opinion of the Court of Appeal for the Second Circuit in Merriwether Supply Company vs. Baugh, 6 La. App. 730, would give the impression that that case is decisive of the question presented here because there the Court said:

"But plaintiff failed to allege that it mailed or otherwise, sent to Mrs. Baugh, the owner, or her architect, or other representative, a sworn, itemized statement of its amount, or that it recorded a sworn statement of the amount thereof, or its contract in the office of the. recorder of mortgages in the parish in which the work was done within thirty days after the registry of notice of the acceptance of the work."

The real fact upon which the decision turned, however, was that plaintiff not only did not allege that the service had been made within the thirty days, but did not allege that it had been made at all.

Since the statute makes the service of an account prerequisite to holding the owner liable, it is manifest that the failure to allege any service at all, is a fatal omission; and since, in the Baugh case, the petitioner failed to allege any service there was no necessity for the Court to include in its remarks the words: "Within thirty days after the registry of notice of acceptance of the work."

Since then, in the Baugh case the exception was aimed at the fact that there was no allegation that the service on the owner had been made, whereas, the exception here is aimed at the fact that the allegation although it does set forth service, does not set forth the time of service; it is quite evident that the case is not controlling here even by authority of reason.

In Dixie Building Material Company, Inc., vs. Chartier, supra, this Court. held that the furnisher of materials who fails to serve the account within the time limit loses the right to a lien on the property, but, nevertheless, is not, by such delay, deprived of his claim against the owner personally.

The decision in the Chartier case was based on the provisions in the statute to the effect that the owner who does not require a bond, or who fails to record the contract and bond "shall be liable * * * to the same extent as the surety would have been." This Court felt that under the many decisions of this, and the Supreme Court, a surety is not relieved of his liability to the materialman, merely by reason of delay on the part of the materialman in recording his lien and serving his account, and, since the owner, where there is no surety, is liable to the same extent as the surety would have been, then, in such case, the owner should not be relieved of liability, by reason of such delay on the part of the materialman or the sub-contractor.

In Shreveport Building & Loan Association vs. Whittington, 141 La. ——, on rehearing, the Supreme Court said:

"The mistake which the learned counsel for the surety company make is in not distinguishing between the owner, between whom and the materialman there is no contractual relation, on whose part there is no liability, except that created by law against, or without his consent, and the surety company who has voluntarily entered into a contract to pay the materialman in case the contractor does not and has received a consideration for thus engaging itself."

However, whether the owner who does not require a bond stands always in the same situation in which the surety would have stood is not material here, because we believe that under the facts alleged, there is created a presumption that no acceptance was filed by the owner, in the mortgage office, and that, therefore, from the time within which the account should be served and the claim should be recorded has never commenced to run.

It seems to us that where it is alleged that no contract was recorded in the mortgage office, there is a presumption that no acceptance of the contract was recorded. Of course, we concede that there might have been an acceptance recorded where there was no recordation of the contract, but experience shows that these cases are few and far between and that the usual practice is to follow the act in full or not at all.

The statute contemplates a regular, orderly method of procedure commencing with the recording of a contract and bond, and terminating with the acceptance of that contract, and we deem it fair to assume that if it is alleged that no contract was recorded, the presumption follows that no acceptance was recorded.

We now come to defendant's third contention, which is that there is no allegation that the owner, or the architect, or the owner's representative was served with an attested account.

Section 2 of Act 139 of 1922, among other things, provides: "That every person having a claim * * * must send a sworn, itemized statement thereof to the owner, or his architect or other representative."

We find in this petition the following allegation:

"George W. Stem was represented to your petitioner prior to and during the

construction as being the owner of 7724 Burthe Street, and accordingly, on August 13th, 1924, your petitioner caused to be made out and recorded, an affidavit, setting forth petitioner's said claim against the owner of said property and caused the original copies of said original affidavit to be sent to said Gaiennie Company, Ltd., then in the hands of J. A. Gaiennie, Receiver, and to George W. Stem, who resided on the premises in question, 7724 Burthe Street, where at the same time, the said Mrs. Irene C. Jones, also resided."

Does this allegation show compliance with the requirements of the statute?

If the exceptions relied upon had been directed at the vagueness of the allegation, it is certain that plaintiff should have been ordered to amend, and to set forth more accurately the connection or legal relationship between Stem and defendant. Since plaintiff may be able to show that Mrs. Jones herself represented Stem to be the owner, and since that proof would be admissible under the allegation, we do not think that the exception of no cause of action should, on this ground, be sustained. Furthermore, the objection is directed only at insufficiency of allegations of fact and in recent years, the Courts of this State have been very liberal in allowing amendments where exceptions are based solely on insufficiency of allegation.

Under such circumstances, even if we felt that the exception should be sustained, a judgment rendered accordingly would be in effect a judgment of non-suit, and a judgment of non-suit would do no more than delay the proceedings and add to the costs, because prescription would have been interrupted by the suit which is now before us for decision, and the plaintiff could immediately recommence proceedings by filing a new suit.

As the Court of Appeal for the Second Circuit said in Smardon vs. Broussard, 6 La. App. 579:

"As we have hereinabove stated, the suit was dismissed on an exception of no cause of action for lack of essential allegations in the petition, and before any evidence whatsoever was offered on the merits. Clearly this dismissal was grounded on defective pleadings on the part of the plaintiff. A dismissal for that cause has been repeatedly held to be in effect, a judgment of non-suit. Woodruff vs. Producers Oil Co., 142 La. 368, 76 Sou. 803; Carolina Portland Cement Co. vs. Southern Wood D. & F. Co., 137 La. 469, 68 So. 831."

The question of allowing an amendment to pleadings where the amendment is made necessary not by any inherent absence of a right to action, but merely by reason of the fact that the pleader has not made sufficient allegation of fact, has been before the Courts of this State innumerable times, and in all such cases, the Courts have held that the amendment should be allowed, if it did not change the issue, but merely supplemented the allegations made in the original pleadings.

To this effect see Laenger vs. Laenger, 138 La. 532, 70 So. 501, in which Mr. Justice O'Neill, as the organ of the Court, said:

"There are two different classes of exceptions of no cause or right of action in our practice. One is founded upon the omission from the plaintiff's petition of a necessary allegation of fact, which though not alleged, may nevertheless exist. The other, based on a complete statement of the case in the plaintiff's petition, denies that the law affords the relief prayed for. The distinction is observed in the effect of a judgment sustaining an exception of the one class or the other, and was recorded by this court in Baker vs. Frellsen (on rehearing) 32 La. Ann. 829; and in Ogelsby vs. Turner, 124 La.

1084, 50 Sou. 859, and in 127 La. 1094, 54 Sou. 400, by the Supreme Court of Tennessee in the case of Moore vs. Chattanooga Rwy. Co., 119 Tenn. 710, 109 S. W. 497, 16 L. R. A. (N. S.) 978; and by the Supreme Court of the United States in the Northern Pacific Rwy Co. vs. Slaght, 205 U. S. 128-133, 27 Sup. Ct. 442, 51 L. Ed. 738.

"Some authorities distinguish these demurrers by calling the former the exception of no cause of action and the latter the exception of no right of action.

"A judgment sustaining an exception of no cause of action, because of the plaintiff's omission of a necessary allegation is not a bar to another suit on sufficient allegations.

"See Hart vs. Bowie, 34 La. Ann. 326; Succession of Herber, 119 La. 1064, 44 Sou. 888; New York Merc. Co. vs. W. M. Cady Lumber Co., 133 La. 729, 63 Sou. 304; Carolina Portland Cement Co. vs. Southern Wood Distillers and Fiber Co., 137 La. 469, 68 Sou. 831. But a judgment sustaining an exception of no right of action, aimed at the merits of the plaintiff's demand, and assuming the case to be stated completely in the petition, is a basis for the plea of res judicata the same as if the judgment had been rendered on evidence in the case."

Along these same lines we find a most interesting discussion by Mr. Justice Nicholls in Davis vs. Arkansas Southern R. Co., 117 La. 320, 41 So. 587, in the following language:

"The petition in this case is undoubtedly lacking in allegations which are customarily employed in actions such as the one before us. It is open to criticism in that respect, and should be properly amended. We do not think, however, that the missing allegations were of character such as to have warranted the drastic remedy of the dismissal of the suit being applied. The tendency of modern practice is to yield as little as possible to technicalities and to afford aid as far as practicable to the filing of amendments which work no injury and prevent useless delays and costs.

"When the lawmaker in the Code of Practice established and classified exceptions of different kinds to be advanced at different stages of the suit, and to be followed by announced consequences, it was evidently intended that they should be resorted to under the circumstances stated, and be followed by the results declared. It was not contemplated that they should be replaced by sweeping blanket exceptions which would absorb and swallow up all the other exceptions and throw the plaintiffs summarily out of court. The exception of no cause of action in which no specific objections to the petition are set up and which remits the plaintiff to an ascertainment of what they may be to the trial of the exception, is calculated to work injury, and in many jurisdictions the defendant is required by express statutes to specify in detail what the objections are, so as to enable plaintiff an opportunity to remove the same. The exception in this State is some time levelled at the allegations of the petition and some times it reaches back of the petition to the cause of action itself, but up to this time, it has never been exacted that the objections should be set out specifically, but we should see that each exception should be made to perform the function properly appertaining to it, and not be allowed to have substituted for it another, and be lost, merged and confounded."

In numerous cases amendments have been allowed where the issue was not changed thereby. See:

State vs. Hackley, Hume & Joyce, 124 La. 854, 50 So. 772;
Commercial-National Bank vs. Smith, 150 La. 234, 90 So. 581;
James vs. City of New Orleans, 151 La. 480, 91 So. 846;
Sou. Iron & Equipment Co. vs. Cardwell Stave Co., 154 La. 109, 97 So. 332;
Wolff vs. Hibernia Bank & Trust Co., 161 La. 348, 108 So. 667;
Northwestern Bottle Co. vs. Rosen et al., 8 La. App. 284.

We are unable to find any case in which the appellate court, on its own motion, remanded the case so that a petition defective for insufficient allegation might

be amended by the pleader, but it seems to us, since the modern tendency is to cut through technicalities and to avoid unnecessary delays and expenses, that, rather than sustain an exception of no cause of action in a case of this kind, the ends of justice would be better served by remanding the case, so that if the facts justify it, new allegations may be made.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided and reversed and that this case be remanded to the District Court for further proceedings not inconsistent with this opinion.

Cost of this appeal to be paid by appellee.