213 So.2d 141 (1968)
Kearnie J. LAFLEUR, Plaintiff-Appellant,
v.
Carol FORET, Defendant-Appellee.
No. 2411.
Court of Appeal of Louisiana, Third Circuit.
July 29, 1968.
*142 Preston N. Aucoin, Ville Platte, for plaintiff-appellant.
Tate & Tate, by Paul C. Tate, Mamou, for defendant-appellee.
Before TATE, HOOD, and CULPEPPER, JJ.,
TATE, Judge.
This suit arises from the sale of a home. The deed conveyed the home lot "together with all buildings and improvements thereon and thereto appertaining". The question is whether window-unit airconditioners, certain outbuildings, and certain accessories passed with the sale.
Plaintiff Lafleur, the seller, sues to recover the two window air-conditioners, which the defendant Foret, the buyer, refuses to let him have. The buyer Foret reconvenes to pray that the seller return to him several items removed from the premises after the sale, being principally some dog houses and a chicken shed. Under the trial and appellate pleadings[1], the ownership of all of these items is at issue.
The primary legal issue to be determined is whether the air-conditioners and other accessories are immovable property which passed with the sale of the soil, or whether instead they remained movable property which the seller had the right to take with him after he sold the premises. For, in the absence of a clear contractual intent otherwise, the sale of an immovable (the tract of land) includes all movables that have become immobilized by reason of some relationship with it[2].
Under Louisiana law, property (things) may be classified as movable or immovable. La. Civil Code Art. 461. Immovables include not only those things immovable by nature (i.e., that cannot be removed from one place to another), such as lands and buildings, Civil Code Art. 464, and components of such immovables (such as fruit crops growing on the land until cut), Civil Code Arts. 465, 469. Immovables also include those things which the law classifies as immovables because of their relationship to an immovable by nature, such as attachments, accessories, cattle, etc. Civil Code Arts. 467, 468, 469.
1. The Window Air Conditioners.
The precipitating cause of this litigation was the controversy over the air-conditioners. Because the chief argument is concerning them, we will first discuss the application *143 of immobilization principles to them.
The evidence shows that two window airconditioners were installed by the plaintiff Lafleur before he sold the property. Their installation is relatively simple:
The air-conditioners themselves are not attached to the premises, but a rack is attached to the window-sill by two removable screws. The air-conditioners are then slid into the racks and screwed to them, the window is closed, and an electric cord from the conditioners is plugged into a wall outlet. To remove the air-conditioners, the rack is unscrewed, and the air-conditioners and rack are lifted away. The sole residue of their presence is then two small screw holes in the window sill.
The defendant buyer contends that these air-conditioners became immobilized by reason of three principles: (a) that they became immobilized by destination because permanently attached to the premises, La. Civ. Code of 1879, Arts 468(2)-469[3]; (b) that they became immobilized by destination because placed on the tract of land for its service and improvement, Civ. Code Art. 468(1) (see footnote 3); or (c) that they became immobilized by nature as components of an immovable, because attached to the building by the owner for the use or convenience of the buildings, Civ. Code Art. 467.[4]
We hold that the air-conditioners did not become immovables by nature or by destination under the cited Code articles, for the following reasons:
(a) Permanent Attachment:
The last paragraph of Art. 468 provides: "All such movables as the owner has attached permanently to the tenement or to the building are likewise immovable by destination." Article 469 explains that permanent attachment occurs if the movables are "affixed to the same with plaster, or mortar, or such as can not be taken off without being broken or injured, or without breaking or injuring the part of the building to which they are attached." See Footnote 3 above for full text.
Permanent attachment is not present under the facts. The units are easily removable without damaging them or their supporting frames; removal of the two screws is all that is necessary. The only possible injury to the building is the presence of two screw holes which will remain after removal of the units. This is de minimis and insubstantial damage, much less injury than that occasioned in prior cases in which courts have held that damage *144 was so minor that no permanent attachment, and thus no immobilization under CC Arts. 469 and 468(2), occurred.[5]
(b) Service and Improvement of the Tract
C.C. Art. 468 also provides: "Things which the owner of a tract of land has placed upon it for its service and improvement are immovables by destination. * * *." Then follows an illustrative itemization (see Footnote 3 above), which clearly covers agricultural destinations, as well as movables placed in service of an industrial destination.
Within the industrial immobilization principle are included movables placed to service and improve a manufacturing establishment.[6] Thus, a movable placed in service of an industrial destination can become immovable, even though that destination is not a "tract of land", but a building. This conclusion is supported by the specific reference in Art. 468, as examples of things which can be immobilized, to the types of manufactures then existing (sawmills, sugar refineries etc.). Reference to the existing manufactures at the time of the Code's adoption has been determined to be sufficient authority to extend coverage to more modern manufacturing establishments.
The apparent anomaly of allowing immobilization of movables servicing buildings when Art. 468 refers to "tracts of land" is explained by reference to the French text of the article in the code of 1825. There, the word "fonds" corresponds to "tract of land." Fonds, with no English synonym, refers to landed property and can encompass more than tracts of land. This expanded meaning has been accepted since the French text of that article is authoritative and shows the true intent of the drafters.[7]
Our prior jurisprudential applications leave open whether commercial (non-industrial, non-manufacturing business establishments) and residential destinations are included under Art. 468that is, whether movables which the owner places in service of a residence or a commercial building can become immovables, as in the case of agricultural and industrial destinations.
Though the exact question was not discussed, cases have indicated that these destinations are not allowed[8] while others have indicated otherwise[9].
*145 Of course, the facts of this case do not concern a commercial destination, but rather a residential destination of the air conditioners. But, it may be pointed out that both commercial and residential destinations are permitted under an expansive interpretation of corresponding articles of the French Civil Code[10]. Without expressing an opinion as to commercial destinations, a question involving considerably different policy considerations and different implications of the code articles and the cases, we hold that immobilization by destination by a relationship of service as provided by Art. 468 does not extend to movables placed in a relationship of service to a residence.
It is apparent that the literal language of Art. 468 does not extend to residences. Movables associated with farming operations and industry are all that are mentioned.
Though we recognize that the article's literal language has been expanded to include industrial destinations, this is amply supported by the enumeration of the types of industry then in use. However, we find no basis in the language itself applicable to residences. To the contrary, the only reference to residences in the article ("tenement or to the building") is in the final paragraph (468(2)) dealing with permanent attachment. See footnote 3. No reference to residences is made in 468(1) dealing with the relationship of service provision for immobilization. By argument a contrario, if the specific enumeration of residences is made in 468(2) and none is made in 468(1), the intent must have been to exclude residences from the provisions of 468(1).
This interpretation is supported by Aubry and Rau:
"[French Code] Art. 524 [468 of the La.Civil Code of 1870], after defining generally the objects used in the service of exploiting land property, contains a long list of examples. Although these are merely examples, they comprise only agricultural and industrial exploitations, and even within this frame of reference, do not include materials destined for the relations of the enterprise with the outside. Therefore it has been discussed whether such materials are subject to conversion [into immovables]; and whether the rule of conversion applies to commercial enterprises in the narrow sense, that is, non-manufacturing ones. If the materials are necessary to run the enterprise, the reason for conversion is the same as in the cases specified by the statute. But the element of necessity must exist. That may sometimes presuppose the adaptation of the immovable itself for the envisaged exploitation and the use of the movable equipment or materials.
"At any rate, the immobilization takes place only to the extent the movables are necessary for the exploitation.

"It seems that furniture in a house used as a residence can not be, outside of hotels, converted under Art. 524,1, but can be converted under the last paragraph of this article as `permanently attached' to the immovable property. This applies not only when the owner resides in the house (in this case there is no exploitation in the sense of Art. 524) *146 but not even when it is leased furnished, for the furniture is not essential to a residential lease. As to the various equipment of the house, it suffices that they be considered converted, either as immovables by nature or as permanently fixed."[11] (Italics ours)
Immobilization by relationship of service is apparently based on the policy of considering an economic unit in fact (farm and equipment; factory and equipment) as one complete immovable under the law. A residence, however, is not a revenue producing unit, so there is little justification or need for treating it as one. Thus, there is no need for considering movables merely placed in a residence as part of the structure even though the movable serves the residence. Immobilization of movables attached to residences thus is possible only by virtue of permanent attachment, as discussed before, or by virtue of Art. 467, which is discussed later.
Art. 468 requires consideration of the intent of the owner; whether he intended to create a relationship of "service and improvement" between the movable and the immovable. The expression "service and improvement" can be better understood as requiring some type of economic or commercial development of the immovable by reference to the French text of Art. 459 of the 1825 Code.[12] There, "service and exploitation" is used and would perhaps be more clearly translated as "service and exploitation."
In the agricultural and industrial service relationship, it is virtually always clear that an intent to exploit the immovable existsthe mere placing on a farm or a factory and its use there demonstrates the intent. Such an intent to exploit may be present in a commercial destination. However, it is difficult to find such an intent in a residential destination; simply placing a chair or a bed in a house used as a residence does not seem to be the basis for inferring an intent to have those items exploit the residence; they are items of personal convenience and not of the character as would develop the purpose of the enterprise associated with the immovable.
In this area of first impression in which the Code impels no particular result, especially where the mere placing (rather than some type of attachment) is all that is required, and where it is difficult to find an economic (rather than personal) relationship of service, it seems proper to preclude movables from being immobilized by destination under the first paragraph of Art. 468. See also Guillot v. Adams, La. App., 212 So.2d 193 (June 18, 1968). Thus, the air conditioners are not immobilized because they service a residence.
(c) Components of Building and Thus Immovables by Nature
The final contention is that the window air conditioners became immobilized by nature as a "part" of the building to which they were attached. This is based upon Article 467. This article as originally read as enacted in 1870:
"The pipes made use of for the purpose of bringing water to a house or other estate, are immovable, and are part of the tenement to which they are attached."[13]
As amended by Act 51 of 1912, it provides:
"Wire screens, water pipes, gas pipes, sewerage pipes, heating pipes, radiators, electric wires, electric and gas lighting fixtures, bathtubs, lavatories, closets, sinks, gasplants, meters, and electric light plants, heating plants and furnaces, when actually connected with or attached *147 to the building by the owner for the use of convenience of the building are immovable by their nature."[14]
The amendment expanding the coverage of this article was in reasons to cases which had classified as movables some things, which, as a result of current building technology, had come to be considered integral parts of buildings. The legislature then provided that these things should be classified as immovables by nature so they would be treated in law as components of buildings, as they had come to be considered such in fact.[15] In accord with this explanation of Art. 467, the enumeration is not exclusive, and nonenumerated items have been classified as immovables by nature under the article.[16]
Since air conditioning units are not enumerated in the article, the present inquiry must be directed to deciding whether they can be considered within its ambit because of the underlying purposes of the article. The issue thus becomes determining what class or type of non-enumerated movables are to be included within Art. 467's coverage and thus susceptible of immobilization by its provisions.
As noted, the article has been expanded because changes in house construction led to the legislative decision that certain attachments to buildings came to be considered virtually a part of the building itself, thus warranting characterization of them as "immovables by nature." Cases which have applied Art. 467 to non-enumerated items have done so when the movables were closely related to or integrally connected with a building.[17]
In deciding the class of non-enumerated items included in the purview of Art. 467, the items mentioned in the article itself must be the guidepost. A determination of the general character of those enumerated items should be the guide in deciding what non-enumerated items are to be included.
*148 Mentioned are wire screens, pipes, wiring, lighting fixtures, bathroom facilities, and heating plants and furnaces. Common to these items is the fact they are components of a modern-day building, and thus closely related or integrally connected to the building and meeting the test postulated above based on legislative intent and the decided cases.
Thus, the proper standard to apply in the case here (where the parties have not specified their subjective intent on the matter) is a determination of whether the non-enumerated item, is, according to contemporary objective standards, a component of the immovable.[18]
We hold that the air conditioning units in question here are not components and thus not within the class of non-emumerated items susceptible of being immobilized by nature under the provisions of Article 467.
In so holding, we look to (i) contemporary views as to conceptions of components in light of current house construction practices, and (ii) the degree of connection or attachment to the building. While different factual situations might warrant additional considerations, we think those two considerations are dispositive of the issue before us.

i
Window air conditioning units are portable, are moved from house to house quite often and quite easily (in contrast to the items enumerated in Art. 467), and are not generally considered as components. Using the enumeration in Art. 467 as a guide in defining components, we see that plumbing fixtures and pipes, bathroom equipment and wiring are ordinarily and customarily built into or installed in a building so as not to be easily moved. They tend to be considered necessities rather than luxuries. While sometimes technically removable, they in fact seldom are taken off the building. In most of these respects, window air conditioners are generally differentiable.

ii
We recognize that, in addition to our present concern of defining the types of non-enumerated items included in Art. 467's ambit, that article requires connection with or attachment to the building before immobilization can occur. The installation here could possibly meet that test, although that is not our present concern.
But, we do look to means of attachment and connection for another purposeas an aid in deciding whether an item is to be *149 considered a component. We do this in the belief that the degree of connection or integral relationship of the enumerated components can be a guide in deciding whether a non-enumerated item is a component. We consider it valid to consider the differences in the type of attachment or connection involved with the air conditioning units and for the enumerated items to see if they are of the same type.
We think they are not of the same type under this analysis. For example, pipes and radiators are normally installed by means of cutting openings in walls or floors. Ordinarily, some alteration of the building itself is required to accommodate these enumerated components. The same is true of bathtubs, lavatories, closets, sinks, gasplants and the like.
Window air conditioning units do not meet these qualifications. The connection is minimal. There is no alteration in the structure.

iii
It is argued that, since Art. 467 enumerates heating plants and furnaces, air conditioners performing the same type of function should be included by analogy.
We disagree. The deciding element is not function of the movable alone, but whether it is a component. The function of a movable could be considered in deciding whether it is a component, but it is not decisive. Furthermore, it is apparent that some items having exactly the same function as an enumerated item might not be considered components because of different means of attachment, size, general custom etc.
For example, "heating plants and furnaces" are equipment enumerated in Art. 467. They are components not normally portable. On the other hand, a small electric place heater would probably not be considered a component, since it is not the substantial "heating plants and furnaces" contemplated by the article.[19] While it is conceivable that some central air conditioning equipment might be components, the same result is not required for portable window units because of the differences in conceptions about the two, and differences in size, installation, etc.
We thus find that the plaintiff-seller is entitled to recover the possession of the two window air-conditioners, since they had not become immobilized so as to be transferred by the sale of the immovable.
2. Other House Accessories.
For similar reasons, we affirm the trial court's holding that the plaintiffseller was, in the absence of contrary contractual intent, entitled to remove (a) a 12' long electric extension cord, with a socket and a bulb as its end, Tr. 40[20] and (b) a ¼th inch copper tubing, 10-12 feet in length, connected to the seller's refrigerator, Tr. 38[21] and removed by unscrewing its end. These residential accessories were not permanently attached and thus could not become immobilized by distination; nor could they become so immobilized by their service of the premises, since no residential destinations are permitted; nor could they be considered "part" of (a component *150 of) the structure so as to be immobilized by nature.
3. Outbuildings.
The remaining dispute concerns two brooder sheds and three small doghouses.
One of the brooder sheds was twentyfive feet long, five feet high, and four feet deep. (This was used as a brooder for beagle puppies.) The other was ten feet long, but had otherwise similar dimensions. (This was used as a chicken brooder.) Both these rested on the ground on 4" by 4" posts; they could be moved, but it would take more than two men to pick them up.
The trial court found that the two shed structures "were never intended to be moved around but rather intended to be of a permanent nature"; accordingly, it classified them as immovables which had been sold with the soil. On the other hand, the trial court found that the three dog houses (each about five feet high, and 3' by 4' in size) were movables to which the seller retained the ownership.
The determination of whether these sheds and doghouses are movable or immovable depends upon the application of Civ. Code Article 464, which provides: "Lands and buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature." (Art. 468 is inapplicable, providing for immobilization by destination when movables are placed on premises for its service and improvement: As previously noted, this type of immobilization does not take place with regard to residential destinations.)
We pretermit whether these structures are, technically, "buildings" instead of "other structures" under Act. 464.[22] We think that, in either event, the test of immobilization must be whether, interpreted by objective manifestations, the outbuilding can be considered as intended to be permanently affixed to the soil.[23]
Taking into consideration both the permanence (or not) of the placement or attachment of the outbuildings and also their actual physical mobility (or not), the trial court concluded that, under contemporary social attitudes, an objective observer could conclude that the larger structures, the two sheds, were intended by the owner to become permanently part of the premises, while the smaller and more mobile doghouses were not. The court accordingly classified the former as immovables by nature which (in the absence of contrary contractual provision) were conveyed to the purchaser with the sale of the soil; the latter as movables to which the seller retained title.
In our opinion, the trial court correctly applied Article 464, and we affirm its determinations of immobility or not.
Decree
Accordingly, we reject the plaintiffseller's contention advanced by his appeal that the trial court erred in requiring him to return the two sheds to the buyer. Since this contention was the sole basis of his appeal (see Footnote 1) which precipitated these appellate proceedings, in affirming the judgment of the trial court we cast the plaintiff-appellant with all costs of this appeal. The trial court judgment is affirmed in all respects.
Affirmed.
NOTES
[1] The trial court granted judgment principally in favor of Lafleur, the sellerplaintiff. He was awarded the air-conditioners sought by the principal demand, and the dog houses and certain accessories sought by the buyer-defendant's reconventional demand. The seller-plaintiff appeals, however, from that part of the judgment ordering him to return a chicken shed 10 feet long and a dogbrooder shed 25 feet long. The buyer-defendant answers the appeal to pray that, instead, he be awarded all items in controversy.
[2] See La.Civil Code Article 2461; Yiannopoulos, Civil Law of Property, Section 57 (1966); Prevot v. Courtney, 241 La. 313, 129 So.2d 1 (1961); Smith v. Bell, 224 La. 1, 68 So.2d 737 (1953); Scovel v. Shadyside Co., 137 La. 918, 69 So. 745 (1915).
[3] Art. 468. [1] Things which the owner of a tract of land has placed upon it for its service and improvement are immovable by destination.

Thus the following things are immovable by destination when they have been placed by the owner for the service and improvement of a tract of land, to wit:
Cattle intended for cultivation.
Implements of Husbandry.
Seeds, plants, fodder, and manure.
Pigeons in a pigeon house.
Beehives.
Mills, kettles, alembics, vats, and other machinery made use of in carrying on the plantation works.
The utensils necessary for working cotton, and sawmills, taffia distilleries, sugar refineries and other manufactures.
All such movables as the owner has attached permanently to the tenement or to the building, are likewise immovable by destination.
Art. 469. The owner is supposed to have attached to his tenement or building forever such movables as are affixed to the same with plaster, or mortar, or such as can not be taken off without being broken or injured, or without breaking or injuring the part of the building to which they are attached.
[4] Art. 467. Wire screens, water pipes, gas pipes, sewerage pipes, heating pipes, radiators, electric wires, electric and gas lighting fixtures, bathtubs, lavatories, closets, sinks, gasplants, meters and electric light plants, heating plants and furnaces, when actually connected with or attached to the building by the owner for the use or convenience of the building are immovable by their nature, (As amended by Acts 1912, No. 51.)
[5] Yiannopoulos, Civil Law of Property, Section 53, p. 159 (1966); Saunders, Lectures on the Civil Code of Louisiana 159 (1925); Note, 1 So.L.Q. 159 (1916); Kelieher v. Gravois, 26 So.2d 304 (La. App.Orl. Cir. 1946) (Venetian blinds); Folse v. Loreauville Sugar Factory, Inc., 156 So. 667 (La.App.1st Cir. 1934) (bolted machinery). See also Richardson v. Item Co., 172 La. 421, 134 So. 380 (1931) (concerning the lessee's right of removal under art. 2726) (automatic sprinkler system). Innumerable cases have allowed removal of movables that have been immobilized, when subject to creditor's rights, providing material or substantial damage will not result. Removal is permitted if damage is light. See Yiannopoulos, Section 56 at pp. 165 et seq.
[6] Straus v. City of New Orleans, 166 La. 1035, 118 So.125 (1928).
[7] Ibid., 118 So. at 130-131. See Yiannopoulos, Section 52 and authorities there cited.
[8] Day v. Goff, 2 La.App. 75 (La.App.2d Cir. 1925) (showcases, typewriters, adding machine and similar equipment used by a mercantile establishment were held not immovable. The decision is based on lack of permanent attachment, with little discussion of the possibility of application of Art. 468's provisions relative to servicing a "fonds."); Campbell v. Hammond Box & Veneer Co., 167 So. 111 (La.App.1936) (office fixtures used by an industrial establishment held not immobilized. Decision resting on fact that the fixtures were for the use and convenience of a particular business conducted on the property rather than use and convenience of a structure. This is a hard case involving protecting the wage claims of a secretary employed by the business in opposition to a mortgage holder.) Language in the original opinion of Scovel v. Schadyside Co., 137 La. 918, 69 So. 745 (1914) indicates the possibility of applying Art. 469 to residences, but a rehearing opinion indicates otherwise. See Note, 1 So.L.Q. 159 (1916), Yiannopoulos, Section 52.
[9] Scovel v. Shadyside Co., supra note 3; Kelieher v. Gravois, 26 So.2d 304 (La. App.Orl. Cir. 1946) (assuming Art. 468's applicability to Venetian blinds installed in an apartment, the court found the blinds not a service to the building.) This case has been interpreted as applying a residential destination, Note, 7 La.L.Rev. 429 (1947), Yiannopoulos p. 154, note 127, though it can be argued it deals with a commercial destination since an apartment building was involved, Straus v. City of New Orleans, supra, the leading case in the area depends on an interpretation of "fonds" being more expansive than "tract of land". Application of its reasoning could lead to permitting both commercial and residential destinations.
[10] 2 Aubry et Rau, Droit Civil Francais Property 23 (an English translation by the Louisiana State Law Institute, 1966); Yiannopoulos, Section 52 at p. 154.
[11] 2 Aubry et Rau, cited above at footnote 10, at p. 20. See also Yiannopoulos, Section 52 at p. 154.
[12] That is, the 1825 predecessor of Article 468 (see Footnote 3 of the present 1870 Civil Code.
[13] Art. 458 of the Code of 1825; Art. 18, p. 98 of the Code of 1808; and Art. 523 of the Code Napolean of 1804 are substantially the same.
[14] Act 51 of 1912, § 2 added that "no court shall have jurisdiction or power to declare that any such articles above referred to are movables and treat them as such." While § 2 of this act may be pertinent to the enforcement of privileges against such articles, see Note, 9 Tul.L. Rev. 282 (1935), it does not affect the question involved in this case.
[15] See: Yiannopoulos, Section 47 at p. 142; Zengel, Elements of the Law of Ownership, 3 West's LSA-CC 1, 20 (1952); Comment, 20 La.L.Rev. 410 (1960).

In Kelieher v. Gravois, 26 So.2d 304 (La.App.Orl. Cir. 1946), Judge Janvier, concurring at p. 307, said: "Act No. 51 of 1912, which amended Article 467 of our Civil Code, no doubt evidences an intention of the Legislature to extend and broaden the category of things which, upon being attached by an owner to a building for the use or convenience of the building become immovable by nature."
Judge McCaleb, dissenting, at p. 308, said: "This amendment of 1912 was obviously passed for the purpose of rectifying the jurisprudence wherein it had been held that chandeliers and other objects, normally used for the convenience and ornamentation of the building, were not immovables." (The majority opinion, resting on Articles 468 and 469, is not at odds with these statements regarding Art. 467.)
Cf., Scovel v. Shadyside Co., 137 La. 918, 69 So. 745 (1915); L'Hote v. Fulham, 51 La.Ann. 780, 25 So. 655 (1890); McGuigin v. Boyle, 1 Orleans, App. 164 (1904).
[16] Scott v. Brennan, 161 La. 1017, 109 So. 822, 48 A.L.R. 1143 (1926) (water heater forming part of a building's hot water system); Cottonport Bank v. Dunn, 21 So.2d 525 (La.App.1st Cir. 1945) (butane gas tank connected with a house's heating system). See Yiannopoulos, Section 47 at p. 142.
[17] See note 16. Cases which have not found immobilization under Art. 467 can be seen as doing so when the movable was not closely or integrally connected with the building, e.g.: Wilkinson v. McGowen, 160 So.2d 455 (La.App.2d Cir. 1964) (opinion by Judge Hardy) (one mile long gas pipeline held not immobilized under Art. 467, since not indirectly attached to the building or directly part of a building's heating system); Kelieher v. Gravois, 26 So.2d 304 (La.App.Orl. Cir. 1946) (Venetian blinds not immobilized, though the case was decided by interpretation of Art. 468).
[18] Yiannopolous, Section 47 at p. 142: "Thus things which are component parts of a building and all mechanisms incorporated therein and destined to complete it should be regarded as immovable by nature under Article 467."

Keliehier v. Gravois (cited note 15) concurring opinion: "Venetian blinds are not so universally recognized as a necessary part of every house or building as to justify the conclusion that in all cases where there are such blinds they have been put into the building `for the use or convenience of the buildings' as distinguished from the convenience or personal desire of the owner. Most people like Venetian blinds; some few do not.
"I rather incline to the view that such blinds are likened rather to window shades or curtains than to outside blinds or shutters. I cannot see that in its construction or in the method of its attachment a Venetian blind is to be likened to a wire screen. As is well known, such blinds are offered for sale in department stores or hardware stores and come in standard sizes so that they may be very simply attached to window frames and may be moved from one window to another."
In his dissent, Judge McCaleb said: "Finally, it is my conviction that it is the duty of the courts to keep abreast with modern trends; that, in case of doubt as to whether a particular fixture falls within the purview of Article 467 of the Code, the judges should take into consideration those things which are normally regarded as standard equipment in modern buildings * * *." (p. 309). This interpretation of Art. 467 is not denied by the majority opinion, which rests on Arts. 468 and 469.
[19] See Petty v. Jones, 10 La.App. 409, 121 So. 372 (La.App.Orl. Cir. 1929), for language indicating that a steam heating system would be considered part of the structure to which it was attached, and Dixie Bldg. Material Co. v. Chartier, 8 La.App. 469 (La.App.Orl. Cir. 1928) where the court indicates that a portable heater resting on a floor would not be considered a part of the building though its smoke pipe went through the wall.

These cases are not applications of Art. 467, but they do indicate the possibility of treating different types of heating equipment differently.
[20] Denoted in defendant-buyer's reconventional demand as: "Part of the electric wiring of a pump shed used to prevent the freezing of the pump during cold weather."
[21] Denoted in the defendant-buyer's reconventional demand as "Part of the water lines connected and attached to the house".
[22] See Yiannopoulos, Section 46, esp. at fn. 46; but see, e.g., Vaughn v. Kemp, 4 La.App. 682 (La.App.2nd Cir. 1926).
[23] Yiannopoulos, Section 48, also Section 46; Prevot v. Courtney, 241 La. 313, 129 So.2d 1 (1961) (tractor shed and poultry house immovable; no discussion); Jones v. Conrad, 154 La. 860, 98 So. 397 (1923) (water well drilling derrick, temporary, and therefore still movable); Industrial Outdoors Displays v. Reuter, 162 So.2d 160 (La.App.4th Cir. 1964) (advertising sign imbedded in concrete is permanently affixed, an "other structure" immovable by nature).