

# THE ATTORNEY GENERAL
## OF TEXAS

JOHN L. HILL
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

May 21, 1976

The Honorable A. R. Schwartz
Chairman
Senate Committee on Jurisprudence
State Capitol
Austin, Texas 78701

Opinion No. H-824

Re: Whether mobile homes may be insured under the Texas Catastrophe Property Insurance Pool Act.

Dear Senator Schwartz:

You have requested our opinion regarding whether mobile homes may be insured under the provisions of article 21.49 of the Texas Insurance Code, the Texas Catastrophe Property Insurance Pool Act. Specifically, you ask:

> 1. Whether the State Board of Insurance may require members of the Texas Catastrophe Property Insurance Association to provide insurance for mobile homes in a seacoast area;
>
> 2. whether a mobile home is 'immovable property' for purposes of article 21.49; and
>
> 3. whether, if the State Board of Insurance may require members of the Association to provide coverage, it may be provided at a special rate.

Article 21.49 created the Texas Catastrophe Property Insurance Association, composed of "all property insurers authorized to transact property insurance in this State, except those companies that are prevented by law from writing coverages available through the pool on a Statewide basis." Sec. 4(a). The temporary board of directors, made up of

seven members, was directed to submit to the Board of Insurance "for review and approval a proposed plan of operation." Sec. 5(d). If the Association did not submit a plan satisfactory to the Board prior to a certain date, the Board was to write its own plan. Id. On May 10, 1973, the Board of Insurance approved the Association's "Revised Plan of Operation." Article I, section 2 of Part Four of the Revised Plan provides that "'insurable property' shall not include . . . any structure consisting, in whole or in part, of a mobile home." Thus, at present there is no question that mobile homes are excluded from coverage under the Act.

Article 21.49 empowers the "Directors of the Association . . . subject to the approval of the Board [to] amend the plan of operation at any time." Sec. 5(d). In addition, the Association is required, "in the absence of an appeal," to "adopt amendments to the plan proposed by the Board within 30 days." Id. Thus, it appears that the Board may, on its own initiative, amend the Plan of Operation and that any such amendment is effective 30 days from its adoption unless the Association employs the appeal procedure of section 9. We believe, therefore, that the Board may amend the Plan of Operation specifically to include mobile homes within the definition of "insurable property," unless some portion of the statute prevents such action.

"Insurable property" is defined by article 21.49 as

> immovable property at fixed locations in a catastrophe area or corporeal movable property located therein (as may be designated in the plan of operation) which property is determined by the Association, pursuant to the criteria specified in the plan of operation to be in an insurable condition against windstorm, hail and/or fire and explosion as appropriate, as determined by normal underwriting standards . . . . Sec. 3(f).

Thus, unless a mobile home may be classified as "immovable property," the Board of Insurance is without authority to amend the Plan of Operation to include it within the definition of "insurable property." In our opinion, however, there are instances in which a mobile home might be deemed "immovable

property" for purposes of article 21.49.  In Capitol Aggregates, Inc. v. Walker, 448 S.W.2d 830 (Tex. Civ. App. -- Austin, 1969 writ ref'd n.r.e.), the court considered whether a mobile home could serve as the basis for a homestead exemption.  The evidence indicated that

> the method used in placing [the] trailer on concrete blocks was the same as used by house movers who move and relocate entire houses.  448 S.W.2d at 832.

Rejecting the argument that the definition of "house trailer" in the Penal Code had any bearing on the question of a house trailer's eligibility for a homestead exemption, the court concluded that the mobile home "is as physically attached to the land as frame houses built on concrete blocks or cedar posts."  Id. at 833, 835.

Other states have adopted a similar view.  In Ballard's Inc. v. Evans, 241 So.2d 557 (La. Ct. App. 1970), a Louisiana court held that a truck body without wheels resting on concrete blocks that was not capable of being lifted by two men and was intended to become a permanent part of the premises was an "immovable."  241 So.2d at 562.  Likewise, in Lafleur v. Foret, 213 So.2d 141 (La. Ct. App. 1968), the court held that a chicken brooder shed whose dimensions were 5 feet by 4 feet by 10 feet and which could not be moved by two men was an "immovable."  213 So.2d at 150.

The purpose of the Catastrophe Property Insurance Pool Act is to "provide a method whereby adequate windstorm, hail and fire insurance may be obtained in certain designated portions of the State of Texas," since "an adequate market for [such] insurance is necessary to the economic welfare of the State of Texas."  Sec. 1.  On the basis of this declared purpose, and the above cited decisions, we believe that the Board is authorized to adopt a definition of "immovable property" that would in certain instances permit the inclusion of mobile homes within that definition.  Although by virtue of its expertise in this area the Board is best qualified to

fashion its own definition, we believe that it should consider such factors as the size of the mobile home, its degree of attachment to the land on which it is situated, the presence or absence of wheels, and in particular, the mobile home's degree of compliance with the "tie-down" standards of the Mobile Homes Standards Act, article 5221f, V.T.C.S.

Your final question is whether, if the Board may require members of the Association to provide coverage for mobile homes, such coverage should be subject to a special rate and whether the Association could create standards governing eligibility for coverage under the rate established for mobile homes. Article I, section 4, of Part Four of the Plan of Operation provides that "the rates, rating plans and rate rules applicable shall be those established pursuant to Section 8 of the Act." Article 21.49, section 8(a), requires the Association to

> file with the Board every manual of
> classifications, rules, rates . . . ,
> every rating plan, and every modifica-
> tion of the foregoing which it proposes
> to use.

Section 8(c) authorizes the Board to "approve, modify, or disapprove" such manuals of rates and classification. Furthermore, under section 5A(a), the Board may

> [a]fter notice and hearing . . . issue
> any orders which it considers necessary
> to carry out the purposes of this Act
> including, but not limited to, maximum
> rates, competitive rates, and policy forms.

Accordingly, we believe a separate rate structure may be provided for mobile homes.

### S U M M A R Y

The State Board of Insurance may
require members of the Texas Catastro-
phe Property Insurance Association to
provide insurance for mobile homes in a
catastrophe area, provided a mobile home
is properly classified as "immovable
property."  The Board may adopt a
definition of "immovable property"
that would in certain instances permit the
inclusion of mobile homes within such
definition.  If the Board requires the
inclusion of mobile homes within the
Catastrophe Pool, it may further require
that rates be established and classifications
created in accordance with article 21.49,
section 8, Texas Insurance Code.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb